UNITED STATES v. FOUT.

(District Court, E. D. Missouri, E. D. May 13, 1903.)

**1. UNITED STATES—PRESENTING FORGED PAPERS IN SUPPORT OF CLAIM—EVIDENCE TO SUSTAIN INDICTMENT.**

Rev. St. § 5421 [U. S. Comp. St. 1901, p. 3667], covers three offenses: First, the making of any forged or counterfeit deed or other writing for the purpose of obtaining any sum of money from the United States or any of its officers; second, the uttering of any such forged or counterfeit paper with intent to defraud the United States, knowing it to have been so forged; third, the transmitting or presenting to any office or officer of the government any such writing, with knowledge that it is false or forged, with intent to defraud the United States. *Held*, that such offenses are separate and distinct, and that proof that a defendant forged papers purporting to transfer the right to an additional homestead, which is a vendible right, and sold and delivered the same to another for a consideration paid to him, and without any agreement or understanding with the purchaser with respect to the use to be made of them, would not support an indictment under the third subdivision of the section, for transmitting such papers or procuring them to be transmitted to a land office with intent to defraud the United States.

123 F.—40

Prosecution for presenting false and forged papers to a land office with intent to defraud the United States.

D. P. Dyer, U. S. Dist. Atty.

Chester H. Krum, for defendant.

ADAMS, District Judge (orally). I have taken occasion, during the recess of the court, to give all the consideration which the time would permit to the important question raised by defendant's objection to further evidence. I have also had the aid of my Brother Amidon, who has examined the question with me, not only in the light of the language of the act, but in the light of all the authorities which we could find, bearing upon the subject. The conclusion which we have reached is that section 5421, Rev. St. [U. S. Comp. St. 1901, p. 3667], denounces three separate offenses. The first is the making or forging or counterfeiting, or causing the same to be done, or aiding or abetting others in the making, of any deed, power of attorney, order, certificate, receipt, or other paper, for the purpose of obtaining or receiving, or enabling any other person, directly or indirectly, to obtain or receive, from the United States, or any officer or agent, any sum of money. That is the first offense denounced by this section. In short, it means that the making of any forged or counterfeited paper of the kinds specified for the purpose of obtaining any sum of money from the United States, or any of its officers, is an offense. The second denounced by this section is that any person who utters or publishes as true, or causes the same to be done, any false, forged, altered, or counterfeited deed or writing of that kind, with intent to defraud the United States, knowing that the paper so uttered or published was forged or counterfeited, is guilty of an offense. That is the second offense. In short, that means that any person who utters—that is, disposes of—any forged, altered, false, or counterfeited paper, by way of trade, or, in other words, any person who sells or vends or puts in circulation any false, forged, or altered paper of the kind described, with the intent to defraud the United States, and knowing the paper to be so forged, is guilty of another and a separate offense. The third offense denounced by the section is that any person who transmits to or presents at, or causes or procures to be transmitted to or presented at, any office or officer of the government of the United States, any deed, power of attorney, etc., in support of or in relation to any account or claim, with intent to defraud the United States, knowing the instrument used to be false, forged, etc., shall be guilty of another offense. Now, more succinctly stated, possibly, this last offense involves the transmission, whether directly or indirectly, of one of these false papers to an office or officer of the United States, with knowledge that it is false, forged, and with intent to defraud the United States.

The evidence in this case so far tends to show that the defendant prepared, or caused to be prepared, certain papers, purporting to be papers requisite and necessary to secure an additional homestead, for three separate persons—Mrs. Jane Smith, Mrs. Louisa May, and John Lee—and that the papers which he so caused to be prepared, or had a hand in preparing, were false papers, within the meaning of the law,

and therefore, as construed by the courts, forged papers, within the meaning of the section 5421. The evidence further shows that after he had taken the steps, or done the acts, which, as I say, tend to show such conduct on his part, in the way of preparing these papers, he sent them to the witness E. M. Robards at Springfield, Mo., as an act of delivery to him of an assignment of the right of these three persons to an additional homestead. It appears that the original transfer by this lady, Mrs. Jane Smith, transferred the right to the additional homestead directly to Robards; but the evidence tends to show that this was done by the procurement of the defendant in this case without the knowledge of Mrs. Smith and in fraud of her rights. Without commenting on this conduct, the evidence tends to show that the defendant did what he did for the purpose of securing to himself a vendible thing. Therefore, when he had gotten the assignment, he proceeded to vend it—to sell it—and did so, making a contract with Robards to deliver it to him for a certain sum of money, to wit, $300. Robards received this paper, and paid, by way of the usual course of transmission, $300 to the defendant. There is no evidence at all showing that Robards and the defendant Fout had any understanding whatsoever in relation to any future use that was to be made of this paper. There was no understanding that Mr. Robards should act for Fout, the defendant, in transmitting the paper to a land office, or that he should act with him in partnership, or have any interest with him, in the matter of transmitting the paper. So far as the case shows, the transaction between the defendant in this case and Robards ended entirely with the transmission of this assignment to Robards, and the collection of $300, which was the agreed price for the assignment of the right to the homestead of 80 acres of land involved in this case.

Now, then, the question arises whether the bare making of a false affidavit or false paper, which comes within the category of papers denounced by this section (5421) as unlawful, and the transmission of them to a vendee, equivalent to the delivery of them to a vendee, is any evidence at all of the transmission or causing to be transmitted of such a paper to the land office. This is the question. The plain language of the third clause of this statute seems to us to mean that the crime denounced by it is "the transmission or causing to be transmitted of the paper" to a land office of the United States. Now, it is contended that the bare fact that the defendant made the paper is in itself evidence that he caused the paper to be transmitted, inasmuch as the value of the paper ultimately depended upon its being transmitted to the land office, there to secure an entry. We are not able to agree to that proposition. Of course, the paper could not have been transmitted if it had not been made. Neither could a house be burned if it had not been built. But it would hardly be contended that the construction of a house would be any evidence of the fact that somebody burned the house. Now, by like kind of argument, we should say that the bare fact that the paper was made would not be any evidence that the maker caused it to be transmitted. There would not be any causal connection between the act done and the act sought to be proven. We think that neither the making of the paper nor the selling of the paper, in the first instance, is any evidence of the "causing

to be transmitted or procuring to be transmitted," within the meaning of the act. Neither of them is the proximate cause of transmission. Neither do we think the bare fact they were sent to this man Robards would be any evidence of a transmission to the land office. Why? The law is now well settled that these assignments of additional homestead rights are vendible, like commercial paper, certificates of stock, and may pass from hand to hand indefinitely. The person who has them has the right to present them at the land office and have land located for him, if he so desires. They may be left in circulation, as a matter of trade or traffic, indefinitely. Therefore, it seems to us very clear that where a person transfers these papers to another, whether guilty of the initial act of fraudulently making them or not, he is simply exercising that power of sale or transfer which the law gives him a right to exercise. If this statute contained words "procure" or "intended to procure," I think my Brother Amidon would agree with me that the bare fact of making papers of this kind, which in order to get their fruition would have to be transmitted to a land office, would be some evidence of the intent that they should be so transmitted. But the statute employs no such words. That is not the crime denounced by the act. It is "transmitting or causing to be transmitted to the office."

But there is to our minds a still stronger reason why the evidence sought to be introduced is not permissible. The three portions of the section to which I have called attention are found, upon critical examination, to be entirely exhaustive of all probable offenses. As I have already said, the first clause denounces as a crime the making of these false papers with intent to secure money. The next is the uttering of these papers with intent to defraud the United States. The third is, as stated, the transmission or causing the same to be transmitted to an office. Now, if the contention of the government is correct—that the bare fact that these papers were made and sold by the defendant to the witness Robards is any evidence of their "transmission"—Congress would be guilty of tautology in the provisions which it has made in these sections; for all that is now shown in this case, in our opinion, is fully covered by the second subdivision or clause of the section. That provides that "any person who utters any false, forged, or counterfeited paper, with intent to defraud the United States," etc. It must be conceded that all that is shown in this case is the uttering of these papers; the uttering being, as I have already said, in contemplation of law, the disposing of them by way of trade—the selling or vending of them. That is what "utter" means in connection with these statutes, as we understand it. Now, if what you claim is the correct interpretation of the third clause of the section, Mr. District Attorney, there would be no sense in the provision of the second clause. All the clauses must be so read as to give force and effect to each. To give force and effect to each, we hold that the person who "transmits or causes papers to be transmitted to the land office" must be the person who is the active mover, who actually transmits or causes to be transmitted, who is proximately responsible for the transmission, and not the one who merely utters or sells the paper.

It appearing that the government has no other evidence of transmit-

ting the papers in question than what is involved in the making of the papers and selling them, no case, in our opinion, is made or can be made against the defendant under the present indictment.