## PARMENTER v. UNITED STATES, and three other cases.

(Circuit Court of Appeals. Sixth Circuit. December 11, 1924.)

Nos. 4076–4079.

**1. Criminal law ⚖︎1209—Intoxicating liquors ⚖︎173—Indictment for conspiracy to import held not to include conspiracy to transport charged in other count.**

Where one count alleged conspiracy to import liquor from Canada across the Detroit river into the United States at Trenton, and second count alleged transportation from river bank to another point some distance away, contention that there was double prosecution and punishment, because first count necessarily involved transportation from the boundary line to shore, *held* untenable.

**2. Criminal law ⚖︎1134(3)—Withdrawal of count renders academic contentions that such count charged same offense as another.**

Where one count of conspiracy indictment is withdrawn, all questions as to double prosecution and punishment in connection with another count become academic.

**3. Criminal law ⚖︎413(2)—True oral reports of transaction not inadmissible as self-serving, where government proved false report.**

On trial of officers for conspiracy to import and transport liquor, where government proved making of false report of the transaction, evidence of true oral reports was not inadmissible, as self-serving, in view of its bearing on question of intent.

**4. Criminal law ⚖︎400(3)—Parol evidence of written report properly rejected, where failure to produce writing unexcused.**

In prosecution for conspiracy to import intoxicating liquor and to transport same, where defendants, some of whom were officers, filed written report of liquor seized with sheriff's assistants, and then stated to them substance of such report, offer to prove such oral statements *held* properly rejected, where written report was not produced and failure to produce it was unexcused.

**5. Criminal law ⚖︎1170(1)—Exclusion of testimony held not reversible.**

In prosecution for conspiracy to import liquor and to transport same, any error in excluding testimony of defendant officers as to oral reports of liquor seized made to sheriff *held* not reversible under Judicial Code, § 269 (Comp. St. § 1246), in view of unsound reason urged for admission and doubtful materiality of offered testimony.

**6. Criminal law ⚖︎673(5)—Evidence as to one defendant's bootlegging operations properly admissible as to him, and not prejudicial under proper instructions as to codefendants.**

In prosecution for conspiracy to import liquor and to transport same where some of defendants were former officers, evidence as to another defendant's recent bootlegging importations was not prejudicial as to defendants whose rights were preserved by appropriate instructions, and was properly received against defendant in question as material on issue of intent in procuring officers to seize liquor involved.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

2 F.(2d)—60

William Parmenter, David Baker, Max Corrigan, and James Quick were convicted of conspiracy, and they each bring error. Judgments affirmed.

Wm. F. Connolly, Wm. Henry Gallagher, and Robert T. Speed, all of Detroit, Mich. (Connolly & Henderson, of Detroit, Mich., on the brief), for plaintiffs in error.

Delos G. Smith, U. S. Atty., of Detroit, Mich.

Before DENISON, MACK, and KNAPPEN, Circuit Judges.

DENISON, Circuit Judge. The undisputed testimony shows this state of facts: Parmenter, Baker, and Corrigan were deputy sheriffs at Detroit, particularly engaged in enforcing the liquor law. Quick was a farmer living near the river below Detroit. Woods lived in Canada across the river. Quick and Woods had been engaged in various bootlegging transactions, transferring liquor from Canada to the United States. On the night of May 28th, Woods and a number of Canadian associates, with two boats, brought across about 1,400 quarts of whisky, and landed it on the American side a few miles below Detroit. They expected to be met by one Stoddard, who, they thought, would then purchase and pay for it. Instead, they were met by Quick and the three deputy sheriffs and their associates, who had been notified by Quick. Woods and the Canadians were arrested and the whisky removed to a nearby farm house. All but 142 quarts immediately disappeared. Woods and all the Canadians, after some detention, were allowed to go home and to take their boats. Four days later a written report of the transaction, signed by two of the deputies, was filed with the sheriff, which stated only that the amount seized was 142 quarts and that the boats escaped.

It is the theory of the government's proof that the prospect of sale held out to Woods was a fiction instigated by Quick, who wished to "frame" Woods on account of a previous transaction between them; that it was the joint plan of Quick and the three officers and their associates, to get the liquor brought across on such a pretended sale, to have the officers seize it and arrest Woods and associates, to have it at once taken away and concealed by the officers and their associates in the conspiracy and to have it later sold and the profits divided among the conspirators on the American side of the river, including the three officers and Quick. There was substantial testimony supporting this theory, including that of two of the de-

fendants (not plaintiffs in error) charged to be among the conspirators, who, after testifying to the contrary, went voluntarily to the District Judge, confessed perjury, went back upon the stand, and gave testimony supporting the government's theory.

This situation developed upon the trial of these four defendants and several others, under an indictment with three counts. The first charged a conspiracy to import intoxicating liquors into the United States; the second, a conspiracy to transport such liquor within the United States; and the third, the actual transportation, from the point of landing on the river bank to a farmhouse 300 yards away. Some of the defendants pleaded guilty, and others, these four among them, were convicted upon counts 1 and 2. Upon the first count the sentences were: Quick and Corrigan each two years and $2,-000 fine; Baker and Parmenter, each two years and $10,000. Upon the second count, Corrigan one year and $1,000 fine, Quick two years and $10,000. The imprisonment sentences on the second count were expressly made cumulative, as to those in the first.

We find only four of the allegations of error which need attention:

1. It is said that as between the first and second counts, there were double prosecution and double punishment. The first count, with perhaps unnecessary elaboration, alleges a conspiracy to import by bringing "from the Dominion of Canada, across the Detroit river into the United States, at Trenton in said county and district, by vessels and landing the same at Trenton in said county." In strictness, this may be analyzed into a plan for importing at the international boundary line in the middle of the river, and a plan for transporting from that line to the American bank. The second count also with detail charges a plan for possession at the river bank and for transportation therefrom to the farmhouse 300 yards away of the same liquor. The argument for plaintiffs in error is that there is no legitimate distinction between the transporting done on the river and that done on the land because there was a single journey from the boundary line to the farmhouse; that a single transportation cannot be split up into parts to make separate offenses; that since a part of this journey was covered by the first count there could be no separate proceeding by the second count based upon the remainder of the same journey.

[1] This contention is, at least, ingenious, but we think it is not sound. It is not clear that the two steps in this transportation would necessarily be inseparable. The indictment does not allege nor is the proof conclusive that the plan to take it from the shore to the farmhouse was part of the plan to bring it to the shore. It would have been entirely consistent with the plan charged in the first count if the intention had been to sell the liquor at the point of landing, or to take it to another destination than that named in the second count. However, it would not avail the plaintiffs in error if it were to be conceded that the whole transportation by boat and wagon constituted one journey. Even then it would be clear, we think, that the transportation on the land would be the dominant element of the journey, would therefore be the appropriate part upon which to base an indictment for transporting, and would be sufficient for that purpose. We say this because, in the physical situation there existing, the importation element of the conspiracy could not practically be complete until the river bank was reached. Whatever might be accomplished in other cases, the charge and the proofs show that in this case the project was to complete the importation by bringing the material, in foreign boats and under foreign control, all the way to the river bank. In that situation, such transportation as occurred on the river was an incident of the importation; and charging it as contemplated in connection with the importation should not be construed as charging a conspiracy to transport. This contention is therefore overruled.

[2] 2. If it were true that the second count, for conspiracy to transport, alleged as its only overt act the actual transportation also charged in the third, then the question of double punishment would arise as between second and third counts; but in this case not only did the second count charge other overt acts, thus disclosing an indictable conspiracy without reference to the actual transportation, but the third count was withdrawn from the jury, and all such questions became academic.

[3, 4] 3. May 29th the two deputy sheriffs, as they say, made to and filed with the sheriff a written report of the transaction of the night before. June 2d they signed and filed the written report already mentioned, which was false, by suppression if not directly. It is their claim that the first report was true and correct. The first written report itself was not offered in evidence; the judge ruled that its absence was not sufficiently accounted for, and hence that pa-

rol evidence of its contents could not be received, and this ruling was accepted and is not now challenged. Thereupon defendants undertook to show that they made an oral report, which was true, full, and complete, and their effort finally took the shape of three separate offers to show three separate oral reports, made to three different officials or assistants. This offer was supported on the ground that such report was part of the res gestæ; it was rejected by the court, at least in part because a self-serving declaration. The rejection cannot rightly be upheld on this ground. The government had shown the second report, not merely as an admission but as an active step in the conspiracy, in that it was an attempt to keep the true facts off the record. In this situation, defendants would have been entitled to show any act inconsistent with a then existing intent to mislead. It does not follow that the rejected parol evidence was admissible. Considering all the offers of proof, in connection with the undisputed testimony of the different witnesses, we think what defendants offered to show was this: They went to the office of the proper assistant to the sheriff and filed this written report; there were then present this sheriff's assistant, a clerk, and a prohibition agent; and these defendants then stated to these three persons the substance of the contents of this written report which they were filing. We think it clear that such a situation does not make parol evidence admissible—in a case where failure to produce the written document is unexcused. To admit such evidence in that situation would destroy the rule which requires the document to be produced or its absence accounted for. The matter seems clear upon principle, and the industry of defendant's counsel has found no authority which is applicable.

[5] If we have interpreted too closely the offers of proof, and if it might be assumed that there were differences, in time and place, between the making of the written report and the proffered oral statements, still we do not find reversible error. The judge was right in declaring the statements self-serving, and would have been right in excluding them for that reason, save for the exceptional situation created by their relevancy to the question of intent in making the later false written report. This exception did not occur to the judge, and defendants' counsel, instead of urging it, then argued persistently the unsound contention that he had the right to prove any statements made by conspirators during the conspiracy, whether self-serving or self-condemnatory. When to the fact that the proper objection—i. e., the proper reason for admitting evidence apparently inadmissible—was not made we add our fact inference that the jury decided the issues on such broad lines of credibility that these oral statements, if proved, would have cut little figure, we are justified, by section 269 of the Judicial Code (Comp. St. § 1246), in overlooking the error, if any there was.

[6] 4. Objections were preserved to several items of testimony which related to Quick's former but relatively recent activity in bootlegging importations from Canada, at about this location. So far as the objection was that such evidence was not admissible against the other defendants, their rights were sufficiently preserved, so far as we see, by appropriate instructions. As to Quick himself, the objection was that it merely tended to show guilt of prior similar offenses. The answer was that the evidence tended to show his intent. The reply was that in this prosecution for conspiracy there was no open question of intent; since, if Quick was a party to the conspiracy, that was the end of the matter. Crinnian v. U. S. (C. C. A. 6) 1 F.(2d) 643. The testimony does not show here the situation which existed in the Crinnian Case. There was proof that Quick knew about this expected importation and brought it to the attention of the officers. Whether he did this, acting as a good citizen to prevent crime, or whether he did it as part of a conspiracy to promote the importation and confiscation, was a question of intent on his part; the proof that he was himself habitually engaged in the business was not irrelevant to the question whether his intent in interesting the officers was honest or criminal. Robilio v. U. S. (C. C. A. 6) 291 F. 975, 984; Wilkes v. U. S. (C. C. A. 6) 291 F. 988, 993.

Each of the four judgments is affirmed.