## MEADOWS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. March 22, 1926. Rehearing Denied April 30, 1926.)

No. 4736.

I. Forgery ⊜12(½)—Forging assignments on genuine registered Liberty bonds, and possessing and uttering thereof with intent to defraud United States, is an offense, notwithstanding failure to comply with regulations prescribing method of acknowledgment (Penal Code, §§ 29, 30 [Comp. St. §§ 10193, 10194]).

Forging assignments on genuine registered Liberty bonds, and possessing and uttering thereof with knowledge of forgery with intent to defraud United States, is punishable under Penal Code, §§ 29, 30 (Comp. St. §§ 10193, 10194), as forgery of writing for purpose of obtaining money from United States, notwithstanding failure to comply with departmental regulations requiring acknowledgment of execution of assignment to be made before designated officers, and not before notary public.

**2. Criminal law ⊜⇒1170(4)—Refusal to permit accused to question government's witness as to his purpose in giving information to government officer held not prejudicial, where he subsequently testified as to circumstances thereof.**

Refusal to permit accused to question government's witness, who testified that he had been convicted of felony, but had not commenced to serve his sentence, as to his purpose in giving information to government officer, *held* not prejudicial, where he subsequently tesrified that he did not give information to get case against him dismissed, and that no suggestion was made that it would be possible for him to obtain parole.

**3. Witnesses ⊜⇒278—Ruling limiting accused's cross-examination of codefendant, for purpose of showing quarrel with accused, held not error.**

Where accused's counsel, in cross-examining codefendant, stated that he was trying to show that he had quarreled with accused, ruling that codefendant could state his feelings toward accused, but not details, *held* not error.

**4. Conspiracy ⊜⇒48—Evidence that defendants conspired to forge assignments on registered Liberty bonds and to utter and possess them held sufficient to go to jury (Penal Code, §§ 29, 30, 37 [Comp. St. §§ 10193, 10194, 10201]).**

Evidence that defendants conspired to forge assignments on genuine registered Liberty bonds and to utter and possess them, with intent to defraud United States, in violation of Penal Code, §§ 29, 30, 37 (Comp. St. §§ 10193, 10194, 10201), *held* sufficient to go to jury.

**5. Criminal law ⊜⇒829(1).**

Rejecting portion of accused's requested instruction was not error, where rejected portion was covered by another charge given.

**6. Criminal law ⊜⇒829(10)—Refusal to give accused's requested charge relating to credibility of accomplice testimony was not error, where matter was fully covered by charge given.**

Refusal to give accused's requested charge relating to credibility of accomplice testimony was not error, where court fully covered matter by defining such relationship, and charging that jury should bear such relationship in mind in considering testimony of accomplice, but that a conviction might he had, if jury believed accomplice, if his testimony was corroborated.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; William B. Sheppard, Judge.

Rush Meadows was convicted of conspiring to forge certain writings on the back of genuine registered Liberty bonds of the United States, and of unlawfully and feloniously uttering and possessing such forged assignments, with intent to defraud the United States, and he brings error. Affirmed.

Paul W. Schenck and Russell Graham, both of Los Angeles, Cal., for plaintiff in error.

Samuel W. McNabb, U. S. Atty., and Albert K. Lucas, Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. Meadows brought writ of error to review his conviction of conspiracy (section 37, Penal Code [Comp. St. § 10201]). The indictment charged that in December, 1924, Meadows and five others combined together to commit certain offenses against the United States:

(1) Knowingly and feloniously to alter and forge, and aid and assist in altering and forging, certain orders, contracts, and writings on the backs of certain genuine registered Liberty bonds of the United States, the bonds being particularly described (with photographs of them and their reverse sides included) in the indictment, with intent to obtain and receive, and enable certain persons to obtain and receive, from the United States and its officers and agents, the sums of money named on the face of each of the bonds described; the orders and writings on the backs of the described bonds so falsely altered and forged being in words and figures as particularly set forth in the indictment. As an example, on the face of one of the bonds appears the name of Brookelsby as payee, whose name appears as transferer, acknowledging the transfer before J. L. Bard, notary public, Los Angeles. The indictment further alleges that the defendants conspired to alter and forge the described orders and writings on the backs of the Liberty bonds described by signing, forging, and indorsing on the back of each bond the name of the respective payee appearing on the face of each of said bonds and the fictitious name of a person purported to be a notary public, contrary to the provisions of section 29 of the Penal Code (Comp. St. § 10193).

(2) To commit the offense of willfully and feloniously uttering and publishing as true, knowing the same to be falsely altered and forged, certain altered and forged orders and writings on the backs of certain genuine registered Liberty bonds, to a person and persons unknown, to obtain and aid such persons and person to obtain money from the United States, the Liberty bonds described in the indictment, and which orders and writings on the backs of the Liber-

ty bonds so falsely altered and forged are set out in the indictment, contrary to the provisions of section 29 of the Penal Code.

(3) Willfully and feloniously, with intent to defraud the United States, having in their possession certain altered and forged orders and writings on the backs of certain registered Liberty bonds, for the purpose of enabling defendants and others to obtain from the United States the amounts of money named in each of the described Liberty bonds, and which said orders and writings on the backs of the Liberty bonds so falsely altered and forged as set out in the indictment, contrary to the provisions of section 30 and in violation of section 37 of the Penal Code (Comp. St. §§ 10194, 10201). Overt acts charged are that Meadows and others met at Los Angeles about December 22, 1924; that Meadows exhibited to certain other defendants certain Liberty bonds; that he took from a designated place in Los Angeles the Liberty bonds, and that he requested one Pancake to sign certain particularly described bonds; that in March, 1925, at Los Angeles, he gave to certain defendants certain Liberty bonds, and that in February, 1925, at Los Angeles, he gave to one Galindo a certain Liberty bond for $100.

Section 29 of the Penal Code provides that whoever shall falsely make or counterfeit any order, certificate, contract, or other writing, for the purpose of obtaining or receiving or enabling any other person to obtain or receive from the United States any sum of money, or shall utter or publish as true any such false, forged or counterfeited order, certificate, contract, or other writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited, or shall transmit to or present at, or cause or procure to be transmitted to or presented at, any office or officer of the government any order, certificate, contract, or other writing in support of or in relation to any account or claim, with intent to defraud the United States, knowing the same to be altered, forged, or counterfeited, shall be fined not more than $1,000 and imprisoned not more than 10 years. Section 30 provides that whoever, knowingly and with intent to defraud the United States, shall have in his possession any false, altered, forged, or counterfeited order, certificate, contract, or other writing for the purpose of enabling another to obtain from the United States, or from any officer or agent thereof, any sum of money, shall be fined not more than $500, or imprisoned not more than five years, or both.

[1] The first assignment raises the question whether an offense against the United States is stated. Defendant's position is that the instruments, if made as described, would have been wholly void on their faces, even though the signatures on the assignments were genuine. With that contention we cannot agree, for it directly conflicts with the statute, which denounces the forging of a writing for the purpose of obtaining money, or enabling any other person to obtain any sum of money, from the United States. The bonds described are genuine, and it is perfectly clear that falsely making an order upon them for the purpose of obtaining money from the United States is condemned by the statute, as is the uttering as true any such false or forged order or assignment, knowing the same to be false or forged, and with intent to defraud the government.

We are not dealing with an instance of a purported bond, but with one that is genuine, where the forged order has been written on the back. The question is not affected by reason of the failure to comply with the departmental regulations, which prescribe that in transferring Liberty bonds the registered owner must sign the assignment, and go before one of the officers mentioned in the regulations, and acknowledge the execution of the assignment, and that such officer must sign the certificate of acknowledgment as a witness, and that a notary public cannot take the acknowledgment. If one who has the necessary intent to defraud makes a false and forged indorsement, the fact that he has not properly complied with the method prescribed to make the transfer technically effectual cannot relieve him of criminal liability. His ignorance does not lessen the guilt. Not knowing how to make an effective transfer does not lessen the turpitude of his acts in conspiring to defraud. Gesell et al. v. U. S. (C. C. A.) 1 F.(2d) 283.

[2] Upon cross-examination a witness for the government testified that he had been convicted of a felony, but had not yet commenced to serve his sentence, and that he had first told the facts he had testified to to a government officer a few days after he read of the arrest of Meadows. Defendant asked the witness what was his purpose in making the statements. Counsel for the prosecution objected. Under the circumstances, defendant was not prejudiced, for thereafter witness was asked by defendant if he had made the statements for the purpose of getting the case against him dismissed, and, after replying that he had not, explained at length that no suggestion was made to him by the

government agents that it would be possible for him to obtain a parole after he had served one-third of his sentence, although he believed that the government might grant him a parole if he behaved himself.

[3] A codefendant who testified in behalf of the government was asked on cross-examination if he had ever had any trouble with Meadows. Witness answered, "No." Counsel for defendant said that he was trying to show that witness had had a quarrel with Meadows, as a result of which Meadows had discharged him. The court ruled that witness could state what his feelings were toward Meadows, but that details were not proper. Witness answered that he had never had any trouble with Meadows, and that witness was ejected from the house in which he lived because Meadows refused to pay the rent. There was no error in confining the examination within the limitation imposed.

[4] Denial of the motion for a directed verdict, based upon the ground of insufficiency of the evidence, was correct. There was evidence in behalf of the government that the registered bonds described were stolen in 1920 from a bank in Nebraska; that the names on the reverse sides were forgeries; that in 1924 Meadows and others met in Los Angeles; that Meadows had a large number of Liberty bonds in a satchel; that he said they had been given to him by some of his clients; that it was suggested that the names of the payee would have to be signed on the backs; that Meadows was seen with a large number of the bonds; that after a discussion concerning the indorsements Meadows sent a man to get some various colored inks and different kinds of pens, so that the signatures would not all appear alike; that each of the several persons present (codefendants), except Meadows, signed bonds; that Meadows did not sign, saying that he would have to sign the bonds at a future time, and did not want his writing in two places; that Meadows took possession of the bonds after they were signed; that he said there were $250,000 worth; that subsequently Meadows tried to dispose of a bond through a third person, and used others as deposits for future deliveries of liquor.

Many assignments are based upon instructions and requests to charge. It is only necessary to refer to the more important points presented.

[5] It is urged that the court erred in modifying an instruction requested by defendant. The substance of the instruction as

11 F.(2d)—46

given was that before defendants could be convicted the jury must believe from the evidence beyond a reasonable doubt that they conspired in the manner charged to commit the acts with intent to obtain or enable others to obtain money from the United States, or its officers or agents, and that one or more of the overt acts charged was committed for the purpose of effecting the conspiracy; that intent was a necessary element, and must be proved beyond a reasonable doubt. The portion rejected included the proposition that, if the defendants conspired to forge the assignments on the bonds, or to utter them as true after they were forged, but did so with the intent to obtain money from a private individual or corporation, and not from the United States, its officers or agents, defendants should be acquitted. Inasmuch as the court in other parts of the charge distinctly stated that it must be found that intent to defraud was for the purpose of obtaining money from the United States, its officers or agents, or to enable some other person to obtain money from the United States, there was no error.

[6] There was no error in refusing a request pertaining to the credibility of the witnesses who were accomplices. The court fully covered the matter by defining the relationship of an accomplice, and charging that an accomplice might be a witness, and that the jury should keep in mind the fact that he was an accomplice while considering his testimony, but that if the jury believed him, and if his testimony was corroborated, conviction might be had.

The court properly refused to instruct specifically that an assignment, if attested by a notary, or if not attested at all, was void, and that no one could obtain money from the United States, its officers or agents, thereby, and that such fact should be considered by the jury in determining whether defendants forged, uttered, or possessed the assignments mentioned in the indictment with the intent to defraud the United States. The request did not state the law as applicable to the case of a charge of conspiracy to commit the offenses defined. As already stated, it was not essential that, in the execution of the conspiracy, there should have been a precise compliance with the mode prescribed for transferring the bonds.

Taking the whole charge together, we think it defined the material elements of the offenses charged, and carefully preserved the rights of the defendants.

The judgment is affirmed.