## BEDDOW v. UNITED STATES.
### No. 9850.

Circuit Court of Appeals, Eighth Circuit.
April 17, 1934.

Rehearing Denied May 25, 1934.

Carlos W. Goltz, of Sioux City, Iowa, for appellant.

Harry M. Reed, U. S. Atty., of Waterloo, Iowa, and D. C. Browning, Asst. U. S. Atty., of Sioux City, Iowa, for the United States.

Before STONE and WOODROUGH, Circuit Judges, and OTIS, District Judge.

WOODROUGH, Circuit Judge.

This is an appeal by Frank R. Beddow from judgment convicting him on three counts of conspiracy with Dale C. Koon and Frank A. Heldridge to forge and utter indorsements upon certain Liberty bonds of the United States in violation of section 73, title 18 USCA.

The indictment contained five counts at the time of submission to the jury. The first three counts charged the defendants with conspiracy to forge the name "John Donovan" in the transfers on the backs of three separate genuine registered Liberty bonds of the United States for the purpose of obtaining, or enabling other persons to obtain, money from the United States, its officers or agents. The fourth count charged the defendants with conspiracy to utter and publish as true the said transfers on the bonds described in count 1 to J. G. Sibert with intent to defraud the United States. The fifth count charged conspiracy to utter the bond described in count 3 to Davidson Bros. Company. The other counts were previously dismissed. Before trial Koon entered a plea of guilty to all five counts, and was sentenced. The others entered a plea of not guilty, and Heldridge was acquitted on four counts, and as to one the jury disagreed, and it was later dismissed. Beddow was convicted on all five counts and sentenced to maximum penalty on count 1, the charge of conspiracy to forge, on count 4, the charge of conspiracy to utter to J. G. Sibert, and, on count 5, conspiracy to utter to Davidson Bros. Company. Motion for a new trial was granted Beddow as to the second and third counts.

There was evidence tending to establish the material facts as follows: In an unexplained manner Beddow came into possession of certain Liberty bonds in the amount of $17,000 registered in the name of and belonging to John Donovan, which formed part of the loot taken in the robbery of the Gorham State Bank of Gorham, Kan., on October 8, 1931. The bonds at that time bore no indorsements. Later in the same month, Beddow, who was engaged in trading California land, went to Sioux City, Iowa, where he endeavored to procure a loan on the security of the bonds offered as collateral. He sought out Koon, and asked him if he knew where he might obtain such a loan, telling him that he had acquired the bonds in a land deal. Koon suggested that Heldridge, an employee of the Sioux National Bank, might know where the loan could be obtained. Heldridge approached Sibert, a creditor of Beddow's, and through him a loan for $7,000 was finally negotiated; the understanding being that the bonds were to serve as collateral. The day after these negotiations took place, about November 4, 1931, Beddow went to Koon's house, produced the bonds, and told Koon he had a power of attorney to handle the bonds as he saw fit. Beddow told Koon the bonds must be indorsed by an official of the Central Land Company or the Pacific Investment Company. Koon was an officer of one of these companies. Koon then indorsed the name of John Donovan on all the bonds ($17,000 worth). The defendants then went before one Lathrop, a notary public, who advised them that he could not take acknowledgment, but upon their assurances did witness the forged signatures of John Donovan on the bonds. The bonds to the amount of $12,000 were then delivered to Sibert to secure notes signed by Beddow, Koon, and one Keefe for the loan of $7,000. Out of this Koon and Heldridge each received $250 for their services from Beddow.

In December, 1931, Beddow again came to Sioux City seeking an additional loan, and called on Koon. Koon drove him to Sibert's office, where Beddow requested a loan of $2,000. Sibert refused because he had discovered that the bonds previously taken were improperly indorsed. Koon then drove Beddow to Davidson Bros. Company, to whom Beddow was indebted, and, after some consideration, received a loan of $2,250, indorsing to him a note for $5,000 bearing the forged indorsement of John Donovan. This deal was consummated in the evening; the understanding being that Heldridge would, the following morning, make delivery of the bonds alleged to be in his hands as escrow holder, and thereby secure the $5,000 note to Davidson. Such delivery was made by Heldridge the next morning, and out of this deal Koon received $125 and Heldridge $125 from Beddow. Upon receiving the bonds, Davidson discovered that they were improperly indorsed, and thereafter Beddow, who had gone to California, repeatedly assured Davidson he would fix everything up. Beddow returned to Sioux City early in 1932 and delivered to Davidson deeds to certain lands in lieu of the bonds. In February or March, 1932, Beddow executed deeds for certain lands to Sibert in lieu of the bonds which Sibert held. The bonds, however, were turned over to agents of the Department of Justice, and prosecution followed.

The appellant summarizes his assignments of error in three contentions. The first is that the conviction should be reversed, with directions to dismiss the indictment because "there could have been no such offense committed under the indictment, or under the facts in violation of the laws of the United States"; the second is that the conviction under count 4 should be reversed because "the facts thereunder are essentially part of the alleged crime set forth in count one"; the third is that the conviction under count 5 should be reversed because there was no evidence of conspiracy as to the offense covered thereby.

■■■ The argument in support of the contention that the indictment is bad as to all counts involved here is that the bonds in question were registered bonds; that the requirements of the Treasury Department as to transfer of such bonds was that the transfer or indorsement must be executed before certain designated officials and a notary public "is not authorized to witness assignments"; that the forged transfer was witnessed only by a notary public; that an indorsement so witnessed could not be recognized by the Treasury Department, and therefore no money could be obtained from the United States thereunder. In essence, this argument and contention is that the conspiracy as alleged in the indictment and shown by the evidence could never have been successful, and, since it could not have been successful, it was not criminal. The contention is without merit. Neither the success nor the failure of criminal conspiracies is determinative of the guilt or innocence of the conspirators. Goldman v. United States, 245 U. S. 474, 38 S. Ct. 166, 62 L. Ed. 410; United States v. Rabinowich, 238 U. S. 78, 86, 35 S. Ct. 682, 59 L. Ed. 1211; Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278; Clune v. United States, 159 U. S. 590, 16 S. Ct. 125, 40 L. Ed. 269; Meadows v. United States, 11 F.(2d) 718, 720 (C. C. A.); Morris v. United States, 7 F.(2d) 785, 791 (C. C. A. 8); Bell v. United States, 2 F.(2d) 543 (C. C. A. 8); Gerard v. United States, 61 F.(2d) 872 (C. C. A. 7).

■■■ The contention that the conspiracy to forge (count 1) and the conspiracy to utter (count 4) constituted but one crime is also without merit. The accepted test of whether two charges are for the same crime is whether the evidence necessary to establish one of them establishes the other (Blockburger v. United States, 284 U. S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306; Albrecht v. United States, 273 U. S. 1, 11, 47 S. Ct. 250, 71 L. Ed. 505; Morgan v. Devine, 237 U. S. 632, 641, 35 S. Ct. 712, 59 L. Ed. 1153; Gavieres v. United States, 220 U. S. 338, 345, 31 S. Ct. 421, 55 L. Ed. 489; Cain v. United States, 19 F.(2d) 472, 475, this court; Gillenwaters v. Biddle, 18 F.(2d) 206, 208, this court; Roark v. United States, 17 F.(2d) 570, 572, 51 A. L. R. 870, this court), and this rule is applicable where both charges are for conspiracies covering related acts (Thomas v. United States, 156 F. 897, 17 L. R. A. (N. S.) 720, this court; Yenkichi Ito v. United States, 64 F.(2d) 73 (C. C. A. 9), certiorari denied 289 U. S. 762, 53 S. Ct. 796, 77 L. Ed. 1505; Pollock v. United States, 35 F. (2d) 174 (C. C. A. 4); Henry v. United States, 15 F.(2d) 365 (C. C. A. 1); Powe v. United States, 11 F.(2d) 598 (C. C. A. 5); Vlassis v. United States, 3 F.(2d) 905 (C. C. A. 9); Parmenter v. United States, 2 F.(2d) 945 (C. C. A. 6), certiorari denied 268 U. S. 697, 45 S. Ct. 514, 69 L. Ed. 1163).

The statute here involved (18 USCA § 73) denounces three offenses, forgery, uttering, and presentation for payment. United States v. Fout, 123 F. 625, 626 (D. C. Mo.); United States v. Hartman, 65 F. 490 (D. C. Mo.). Also see Reid v. Aderhold, 65 F.(2d) 110 (C. C. A. 5), certiorari denied, 290 U. S. 676, 54 S. Ct. 104, 78 L. Ed. ——, which involved a similar section of the Code of the District of Columbia.

The evidence necessary to establish one of these offenses does not establish the other. For instance, the charge of conspiracy to forge the indorsement under count 1 would be complete if the transaction stopped there and no utterance were attempted; so that evidence which would completely establish the offense under count 1 would not establish the commission of the crime under count 4. On the other hand, the conspiracy to utter, charged in count 4, might be completely proven without reference to any conspiracy to forge the indorsements; all the necessary proof being that the indorsement was forged and there was a conspiracy to utter the forged instrument. Since the proof of either of these charges does not establish the other, they are properly charged as separate offenses separately defined in this statute.

■■■ The contention as to count 5, that the evidence shows the acts of uttering to have been those of Beddow alone and no conspiracy, is equally without merit. The co-conspirator Koon testified for the government admitting assisting Beddow in his transactions with Davidson, and at that time Koon knew that his indorsement of John Donovan's

name upon the bonds was unlawful. He knew that Beddow was going to try to sell the bonds with the forged indorsement to Davidson Bros., and drove Beddow to Davidson's place of business and waited for several hours for him, and also he got part of the money realized on that transaction. The other conspirator, Heldridge, was even more active in this transaction. Davidson would not close the transaction until he had possession of the bonds. Beddow told Davidson that Heldridge had the bonds under an escrow agreement and went with Davidson to Heldridge. Heldridge assured Davidson he was so holding the bonds, and later met Davidson and appellant, helped to carry out the transaction, and delivered the bonds to Davidson from his own pocket.

It is noted that at the close of the evidence a general motion for a directed verdict was filed and an exception allowed to the ruling thereon, but the ruling is not made the subject of any assignment of error. An assignment is made which merely asserts that the evidence is insufficient to support the verdict. As a rule, an assignment of error must be limited to the rulings, judgments, orders, or decree of the lower court. Gibson v. Luther (C. C. A.) 196 F. 203. Our examination of the evidence has convinced that it does fully sustain the verdict, but the assignment of error is insufficient to require a review of the evidence.

Judgment affirmed.