### SHAPIRO v. KING.

### No. 144.

District Court, W. D. Missouri, S. D.

April 5, 1941.

Frank Brockus, of Kansas City, Mo., and Ralph R. Quillian, of Atlanta, Ga., for Shapiro.

Thomas A. Costolow, Asst. U. S. Atty., of Kansas City, Mo., for Dr. M. R. King.

REEVES, District Judge.

Petitioner seeks his release upon the several grounds: (a) That consecutive sentences were improperly imposed in several counts of two indictments upon which he had been convicted at separate trials, and (b) that the sentences imposed in the second and last indictment were improperly made to run consecutively with sentences previously imposed at his first conviction. The point now made is that the counts of the several indictments for the most part cover identical offenses.

On November 6, 1933, the petitioner was named as a defendant in two separate indictments returned by a grand jury of the United States District Court for the Southern

District of New York. Each indictment contained four counts and both were drawn under Sections 1 and 2, Title 15 U.S.C.A., relating to the general subject of commerce and trade. Said sections are commonly known as the Sherman Anti-Trust Law.

The first count of the first indictment charged a conspiracy in restraint of trade in relation to the rabbit skin industry. The second count charged a conspiracy to monopolize in the same industry. The third count charged an attempt to monopolize, and the fourth count the perfected act of monopolizing a part of said trade.

The second indictment contained corresponding counts but related generally to the fur industry, not including rabbit skins.

The petitioner was convicted on all the counts of the two indictments at separate trials. On the first indictment (C 95-924) he was sentenced to imprisonment for a term of one year on each count. The sentence on count 2 was made to run consecutively in relation to count 1, while the other two counts were made to run concurrently with each other and with the sentence on count 2. Fines were imposed at the same time and were paid. The trial judge expressed as the purpose of the sentence to imprison petitioner for two years. The sentences imposed at the second trial and upon the second indictment (C 95-926) were for one year each on the four counts. The sentences on the first, second and fourth counts were made to run consecutively, whereas the sentence on the third count was made to run concurrently with the sentence on count 1. The object of the sentences as expressed by the trial judge was to imprison the petitioner for a period of three years, and, furthermore, the sentences of three years were to be served following sentence under said indictment C 95-924.

1. Section 1, Title 15 U.S.C.A., contains pertinent language, as follows: "§ 1. Every * * * conspiracy in restraint of trade or commerce among the several States * * * is declared to be illegal. Every person who shall * * * engage in any such * * * conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished * * * by imprisonment not exceeding one year."

Section 2 of said Title as it was written when the indictments were returned contains applicable language, as follows: "§ 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States * * * shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished * * * by imprisonment not exceeding one year, * * *."

It will be noted from the foregoing that the first count of each indictment was under Section 1 and the other counts of each indictment were predicated upon said Section 2.

From the convictions and sentences appeals were prosecuted in each case and both were affirmed by the Court of Appeals, Second Circuit. United States v. Buchalter, 88 F.2d 625; United States v. Shapiro, 103 F.2d 775.

2. In the case first tried and appealed it was contended by petitioner, as here, that counts 1 and 2 of the indictment could not be properly made to run consecutively, one with the other. On this contention, the Court of Appeals stated (88 F.2d loc. cit. 628): "It is said that these sentences cannot be upheld in that they are all for the same crime. That depends upon whether or not a conspiracy to restrain interstate commerce made unlawful by section 1 is the same crime as a conspiracy to monopolize such commerce made unlawful under section 2 so that an acquittal or conviction under an indictment drawn under one section would be a bar to subsequent prosecution for the same acts under the other. If the offenses are identical in law, the sentences are erroneous but otherwise not. In this case it is true that it was the success of a combination in restraint of interstate commerce which brought about the monopoly of such commerce. But as Judge Hough said in United States v. MacAndrews & Forbes Co. (C.C.) 149 F. 836, 838, in holding that offenses under sections 1 and 2 of the Sherman Anti-Trust Act were not identical: 'The offense under the first count was complete when the combination was actually formed with intent to bring about restraint of interstate commerce. The additional overt acts were but cumulative evidence from which the true intent, purpose, and continuance of the combination might be inferred. But they were themselves the proof of the monopoly, and the monopoly consisted in their aggregate effect. That the prosecution in overwhelmingly proving the existence, and intent, and continuance of the combination proved the monopoly does not in my opinion render the offenses identical, merely because all

the evidence offered was in a sense applicable to both counts.' With this we agree and so find no error."

When the appeal from the conviction on the second indictment was before the Court of Appeals, Judge Chase, who wrote the first opinion, sat in the case. The question was not again agitated and concerning it the court said (103 F.2d loc. cit. 776): "Defendant concedes that the court had power to impose consecutive sentences of imprisonment * * * on the first and second counts, based upon the first and second sections of the Act."

Notwithstanding this concession by the petitioner the court again ruled specifically on the point: "Offenses under these sections are not identical, even though all the evidence is applicable to both counts. United States v. Buchalter, 2 Cir., 88 F.2d 625, certiorari denied Shapiro v. United States, 301 U.S. 708, 57 S.Ct. 942, 81 L.Ed. 1362; United States v. MacAndrews & Forbes Co., C.C., 149 F. 836."

On the appeal in the second case the court specifically upheld the last three counts of the indictment as clearly stating separate and distinct offenses. The court stated, in referring to section 2: "In form this section names three separate offenses: the act, the attempt, and the conspiracy to monopolize interstate commerce."

■ The first point made by the petitioner was pressed by him only in the earlier appeal. He yielded the point on his last appeal. The identical question was urged by him upon the Supreme Court of the United States in his application for a certiorari warrant in the first case but a review was denied him. While it is true that the denial of certiorari should not be regarded as a decision on the law or merits of a given case, yet, on a question so vital and so important as where liberty and property are both involved, the Supreme Court would scarcely disregard so serious a question, even though doubtful, unless fully convinced that the point was wholly without merit. At a later date the Supreme Court in the case of United States v. Socony-Vacuum Oil Co., 310 U.S. 150, loc. cit. 226, 60 S.Ct. 811, loc. cit. 845, 84 L.Ed 1129, in a footnote said: "But the crime under § 1 is legally distinct from that under § 2."

The authorities hereinafter cited in connection with the other point raised by the petitioner will be apposite and pertinent to his contention on his first point.

3. It is earnestly contended by able counsel for the petitioner that the sentences imposed on the second or last indictment cannot properly be made to run consecutively to the terms of imprisonment imposed on the first conviction. This is asserted upon the theory that conspiracy to restrain trade and to monopolize, the attempt to monopolize, and the act of monopolizing in the fur industry would comprehend and include the identical acts alleged in the first indictment with respect to the rabbit skin industry.

■ The crime of conspiracy, though known to the law for many centuries, is somewhat difficult to define. The uncertainty shrouding its meaning is due probably to want of specific legislation. At common law conspiracy was defined "as a combination between two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means."

It will be observed that a conspiracy as contemplated by the authorities has a sole or a single unlawful purpose or an intent to use some unlawful means to reach a single lawful object.

Whether a conspiracy is continuous and will extend over a long period of time, or whether it will comprehend several objects depends in every case upon the facts and circumstances as well as the written law.

By analogy, substantive offenses growing out of the same transactions or arising from the same series of acts, as defined by the Congress and as construed by the courts, would be helpful. In the case of Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 711, 59 L.Ed. 1151, the petitioner sought his discharge by writ of habeas corpus "upon the ground that he had endured all the punishment that could be legally imposed upon him by imprisonment under said indictment." The petitioner in that case had been convicted upon seven counts of an indictment which charged in several counts that he "did wilfully, knowingly, and feloniously tear, cut, and injure a certain bag then and there used for the conveyance of mails of the United States." Each count described the mail pouch so torn, cut and injured by its lock and rotary number, and in each count it was alleged that the pouch in such count named was in a certain railway postal car, then and there in transit on a certain railroad.

In deciding the case the court said, (237 U.S. loc. cit. 628, 35 S.Ct. loc. cit. 711, 59 L.Ed. 1151): "This case raises the question whether one who, in the same transaction, tears or cuts successively mail bags of the United States used in conveyance of the mails, with intent to rob or steal any such mail, is guilty of a single offense, or of additional offenses because of each successive cutting with the criminal intent charged. If the successive cuttings into the different bags constitute different offenses, then the court below was right in refusing the writ of habeas corpus. If but a single offense was committed, notwithstanding separate mail bags were successively cut with the felonious intent named in the statute, then the appellant was entitled to the writ, and should have been discharged by order of the court upon the proceedings below."

After quoting the statute, the court continued (237 U.S. loc. cit. 629, 35 S.Ct. loc. cit. 711, 59 L.Ed. 1151): "Although the transaction of cutting the mail bags was in a sense continuous, the complete statutory offense was committed every time a mail bag was cut in the manner described, with the intent charged. The offense as to each separate bag was complete when that bag was cut, irrespective of any attack upon, or mutilation of, any other bag."

The court then made this sensible distinction 237 U.S. 629, 630, 35 S.Ct. 711, 59 L.Ed. 1151: "The case is not like those charges of continuous offenses where the crime is necessarily, and because of its nature, a single one, though committed over a period of time."

This case was followed and approved in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. The defendant in that case had made two sales of morphine to the same person at approximately the same time. The court said (284 U.S. loc. cit. 303, 52 S.Ct. loc. cit. 181, 76 L.Ed. 306): "In the present case, the first transaction, resulting in a sale, had come to an end. The next sale was not the result of the original impulse, but of a fresh one—that is to say, of a new bargain."

It is not necessary, however, to rely upon analogous cases. There are numerous and controlling authorities on questions of conspiracy.

In the case of Piquett v. United States, 7 Cir., 81 F.2d 75, the defendant was convicted of a conspiracy to violate a law of the United States. He had been accused of several conspiracies. The particular federal statute to be violated was one against the harboring of criminals. The conspiracies were commonly referred to as the Dillinger conspiracy and the Van Meter conspiracy. As in this case, there were two indictments. On one there had been an acquittal. The defendant entered a plea of a former acquittal and res adjudicata on the ground that the offense charged in the Van Meter conspiracy indictment was the same as the one charged in the Dillinger conspiracy indictment. The acquittal was on the Dillinger conspiracy indictment. The facts on both indictments were the same for the reason that the harboring had been done at approximately the same time and the same place by the same conspirators.

The court said (81 F.2d loc. cit. 79): "Before a plea of former acquittal can be sustained, the offenses involved must be identical in law and fact. If the offenses are distinct in law, the plea is bad regardless of how closely they are connected in point of fact."

The court then quoted approvingly from the case of Morey v. Commonwealth, 108 Mass. 433, as follows: " 'The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offence. A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. * * *' "

In discussing other conspiracy cases urged by the defendant the court said: "In support of his contention to the contrary, appellant relies upon many cases, all of which seem to us either to be inapplicable or inconsistent with the great weight of authority. We shall refer to them briefly. United States v. Kissel, 218 U.S. 601 * * * merely holds that a conspiracy may have continuance in time. It does not hold that all conspiracies have that characteristic, neither does it hold that there may not be consecutive conspiracies, such as we believe are involved in the instant case, nor does it hold that the general rule for testing a plea of former conviction or acquittal does not apply to conspiracies generally."

The Circuit Court of Appeals for the Eighth Circuit, in the case of Beddow v. United States, 70 F.2d 674, had before it an almost identical question. The defend-

ant in that case was convicted upon counts of conspiracies to forge an endorsement on a Liberty bond, and to utter the same forged bond. Concerning the contention that the two conspiracies could be but a single crime, the court said (70 F.2d loc. cit. 676):

"The contention that the conspiracy to forge (count 1) and the conspiracy to utter (count 4) constituted but one crime is also without merit. The accepted test of whether two charges are for the same crime is whether the evidence necessary to establish one of them establishes the other * *.

"The statute here involved (18 U.S.C.A. § 73) denounces three offenses, forgery, uttering, and presentation for payment. * * *

"The evidence necessary to establish one of these offenses does not establish the other. For instance, the charge of conspiracy to forge the endorsement under count 1 would be complete if the transaction stopped there and no utterance were attempted; so that evidence which would completely establish the offense under count 1 would not establish the commission of the crime under count 4. On the other hand, the conspiracy to utter, charged in count 4, might be completely proven without reference to any conspiracy to forge the indorsements; all the necessary proof being that the indorsement was forged and there was a conspiracy to utter the forged instrument."

In proving the counts of the several indictments upon which petitioner was convicted, a conspiracy to restrain a trade or a part thereof would not require the same facts to establish a conspiracy to monopolize trade. Moreover, a conspiracy to monopolize a part of the trade in furs, such as the rabbit skin industry, would not require the same proof as that necessary to prove a conspiracy to restrain trade in the fur industry generally. The Congress had a serious purpose in this legislation. The ways of dishonest business can be, like fraud, protean and sometimes the vermiculations of a shrewd and an unscrupulous trader will challenge the astuteness and resourcefulness of the legislature to meet the menace of unfair trade practices.

Counsel for the petitioner has earnestly urged for consideration the case of United States v. Anderson, 7 Cir., 101 F.2d 325. Judge Sparks, who wrote the opinion in Piquett v. United States, supra, delivered the opinion in this case also. Judge Sparks epitomized his ruling in the Anderson case when he said (101 F.2d loc. cit. 333): "There was but one conspiracy and its primary object was to stop the transportation of coal. * * * This does not mean that both indictments were not properly pleaded, as a precautionary matter, but we can not believe that Congress intended to permit the accumulation of sentences upon diverse objects of a conspiracy where there was but one conspiracy and the evidence supporting each was precisely the same."

Judge Sparks in the Piquett case properly characterized the case of United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L. Ed. 1168, also relied upon by the petitioner, as merely holding that a conspiracy may have continuance in time.

Mr. Associate Justice Holmes upheld the indictment in the Kissel case as against pleas in bar. Among other things he said (218 U.S. loc. cit. 607, 31 S.Ct. loc. cit. 126, 54 L.Ed. 1168): "But when the plot contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, and there is such continuous co-operation, it is a perversion of natural thought and of natural language to call such continuous co-operation a cinematographic series of distinct conspiracies, rather than to call it a single one."

A careful review of all the cases convinces that the petitioner is not illegally restrained of his liberty and that the writ should be dismissed. It will be so ordered.