Rusling v. Rusling.

SARAH H. RUSLING et al., appellants,

*v.*

JAMES F. RUSLING et al., respondents.

1. When, upon a *caveat* against the probate of a will, the orphans court certifies the questions involved to the circuit court for trial by jury, pursuant to section 19 of the orphans court act (*Rev. p. 756*), and on the coming in of the finding the orphans court decrees accordingly, an appeal to the ordinary opens for consideration not merely the propriety of the decree, but the right to probate of the will. On such appeal, the ordinary may decide the question on the evidence before the jury, or on additional proofs taken in accordance with the practice of the prerogative court.

2. On an issue whether a will is the product of undue influence, the declarations of the testator respecting previous occurrences which are alleged to have exerted the influence, are not evidence to prove or disprove such occurrences.

3. The fact that a will was drawn by a favored legatee, while it calls for suspicious scrutiny of the circumstances, does not of itself invalidate the will.

On appeal from a decree of the ordinary, whose opinion is reported in *Rusling* v. *Rusling, 8 Stew. Eq. 120.*

*Mr. A. G. Richey* and *Mr. Gilbert Collins*, for appellants.

*Mr. Barker Gummere, Mr. W. D. Holt* and *Mr. M. Beasley, Jr.,* for respondents.

The opinion of the court was delivered by

DIXON, J.

The appellants, a son and the widow of Gershom Rusling, deceased, impeach the validity of his will, executed with due formality on January 4th, 1875.

Upon their *caveat* against its probate, the orphans court of Mercer county certified the question involved to the circuit court for trial before a jury, pursuant to the nineteenth section of the orphans court act. The verdict of the jury was against the validity of the will, both for want of mental capacity in the testator and because of undue influence exercised by the principal legatees. This verdict, with the evidence taken and other proceedings in the circuit being returned to the orphans court, a decree was there entered refusing probate; from which decree the proponents, the other two sons of the testator, who are the executors and principal legatees under the will, appealed to the prerogative court, and there the ordinary, deeming the evidence insufficient to establish either ground of invalidity, admitted the will to probate. From his decree this appeal is made.

The first question presented for decision is whether the ordinary had the right to look into the testimony taken at the circuit, for the purpose of passing upon the propriety of the verdict. The appellants contend that the verdict is conclusive as to the facts.

The constitution (*Art. VI.* § *4* ¶ *3*) provides that all persons aggrieved by any order, sentence or decree of the orphans court may appeal from the same or any part thereof to the prerogative court. This provision was merely declaratory of the preexisting law, for the statute of December 16th, 1784 (*Pat. p. 59*), ascertaining the power of the ordinary, stated that his authority should thereafter extend only to the granting of pro-

bate of wills &c., and to the hearing and finally determining of
all disputes that might arise thereon (section 1), and that the de-
termination by the orphans court of disputes respecting the
probate and existence of wills, should be subject to an appeal
to the prerogative court (section 15). So, in substance, have
stood our statutes ever since. *Rev. " Courts" p. 220 § 49, and
" Orphans Court" p. 791 § 176.*

The appeal indicated in these several enactments was always,
prior to the statute allowing trial by jury, regarded as opening
for consideration, not merely the propriety of the decision of the
orphans court, but the whole merits of the controversy, if the
prerogative court so ordered.

Until 1820, there was no statute directing or authorizing the
evidence upon which the orphans court decided, to be preserved,
but in that year it was enacted (*R. L. of 1821 p. 783 § 21*)
that in all causes heard in a summary way upon citation by the
orphans court, the evidence and proceedings, upon the applica-
tion of either party, should be reduced to writing by the register
of the court. Depositions so taken were to be sent up to the
prerogative court on appeal, and there the ordinary might, in
his discretion, either determine the issue upon the proofs so cer-
tified, or permit additional testimony to be adduced. If the
evidence taken below had not been preserved, he could investi-
gate the subject of controversy *de novo. Read v. Drake, 1 Gr.
Ch. 78.* Whether this power of taking testimony in the appel-
late court extended to all appeals, has not been exactly decided;
but in *Sayre's Administrators v. Sayre, 1 C. E. Gr. 505,* Chan-
cellor Green intimates that it is probably confined to that class of
cases in which the prerogative court possesses original as well as
appellate jurisdiction; and this accords with the rule usually
governing purely appellate tribunals, which never (it is said)
permit new evidence to affect the rights of parties. *Black v. D.
& R. C. Co., 9 C. E. Gr. 455, 479.*

In view of such powers and practice of the prerogative court,
the legislature, in the revision of 1874 (*p. 756 §§ 19, 20*), en-
acted that, upon a *caveat* against the probate of a will, the
orphans court might certify the questions involved to the circuit

court for trial by jury; that upon the trial in the circuit, the testimony of the witnesses should be taken down in writing, if required by either of the parties, and that the verdict, with the testimony, if so reduced to writing, a copy of the charge to the jury, and all exceptions taken to the admission or rejection of evidence and to the charge, with other proceedings at the trial, should be certified and returned to the orphans court, and filed by the surrogate; and thereupon, the orphans court is required to make decree touching the probate in accordance with the finding of the issue by the jury.

This statute is manifestly not designed to restrict the powers of the prerogative court. It is silent on that subject. It leaves untouched the right of the ordinary, on appeal, to determine whether a will shall be admitted to probate as an original question before him, without regard to the propriety of the decree of the orphans court upon the matters submitted to its judgment.

The provisions for placing upon the record the evidence, the judge's charge and the exceptions at the trial, indicate a purpose to have these matters open for review somewhere. Although the statute authorizes the circuit judge to ask the advice of the supreme court as to granting a new trial, yet it gives to the parties no right to appeal from any adverse decision at the circuit. No writ of error will lie to review such decision, for the reason that the circuit renders no final judgment. The orphans court is expressly limited by the statute to the making of a decree in accordance with the finding of the jury, and this decree cannot be removed into the supreme court, since its subject-matter is within the jurisdiction of the orphans court. *N. J. Const.*, *Art. VI.* § 4 ¶ 3. There is, therefore, no possible mode whereby the review for which the legislature seems to have made provision, can be had except on appeal to the prerogative court, and thence to this court of last resort. On such appeal, the question for decision remains the same as it was on similar appeals before this statute, viz., not the propriety of the decree below, but the right to probate of the will. Generally, if the testimony taken at the circuit has been sent up, the ordinary will decide the issue upon that evidence; but by order of the court on proper occasion,

further proofs may be brought in, or if the testimony does not appear upon the record, original proof may be made, according to the practice of the court.

We think, therefore, that the ordinary was justified in exercising the power of looking into the evidence.

This brings us to the inquiry whether he did right in admitting the will to probate.

Two grounds of invalidity are alleged by the caveators : first, want of testamentary capacity in the testator ; second, undue influence by the proponents.

It is not necessary to state in this opinion, with any degree of detail, the evidence offered to show the testator's mental incapacity at the time of executing this will, January 4th, 1875. It is enough to say that in our judgment it establishes nothing more than an occasional forgetfulness of the names and faces of persons with whom he did not come into frequent contact. His power to recollect his nearer kindred and to appreciate their claims upon him, to comprehend the amount and character of his estate and to intelligently direct its distribution, does not appear to have been seriously impaired. Such capacity is sufficient for the making of a valid will. *Stevens* v. *Van Cleve, 4 Wash. C. C. 262; Stackhouse* v. *Horton, 2 McCart. 202; Boylan* ads. *Meeker, 4 Dutch. 274.*

For the proof of undue influence, the caveators mainly rely upon declarations of the testator, made some time before and some time after the execution of the will, respecting the conduct towards him of the favored legatees. These declarations are not admissible as evidence of the facts which they were offered to prove.

When undue influence is set up in impeachment of a will, the ground of invalidity to be established is, that the conduct of others has so operated upon the testator's mind as to constrain him to execute an instrument to which, of his free will, he would not have assented. This involves two things: first, the conduct of those by whom the influence is said to have been exerted ; second, the mental state of the testator, as produced by such conduct, which may require a disclosure of the strength of

mind of the decedent and his testamentary purposes, both immediately before the conduct complained of, and while subjected to its influence. In order to show the testator's mental state at any given time, his declarations at that time are competent, because the conditions of the mind are revealed to us only by its external manifestations, of which speech is one. Likewise, the state of the mind at one time is competent evidence of its state at other times not too remote, because mental conditions have some degree of permanency. Hence in an inquiry respecting the testator's state of mind, before or pending the exertion of the alleged influence, his words, as well as his other behavior, may be shown for the purpose of bringing into view the mental condition which produced them, and, through that, the antecedent and subsequent conditions. To this extent his declarations have legal value. But for the purpose of proving matters not related to his existing mental state, the assertions of the testator are mere hearsay. They cannot be regarded as evidence of previous occurrences, unless they come within one of the recognized exceptions to the rule excluding hearsay testimony. These exceptions concerning the declarations of deceased persons are stated by Jessel, M. R., in *Sugden* v. *Lord St. Leonards, L. R.* (*1 P. D.*) *154, 240,* to embrace the following : first, a declaration accompanying an act (*i. e.,* an act relevant to the issue); secondly, a declaration against interest ; thirdly, a declaration made by a person in the course of business, one which it was his duty to make ; fourthly, declarations as to matters of public and general interest, made by persons who may, from their position, be fairly presumed to have had knowledge on the subject; fifthly, declarations by members of a family as to matters of pedigree within the family ; and sixthly, the case cited decides that the testator's declarations may be received as secondary evidence of the contents of his will, when the will has been otherwise proved to have been executed and lost. To these may be added the familiar exception as to dying declarations. Outside of these classes, the unsworn narrations of deceased persons are not, I think, competent evidence of their own truth.

The declarations offered in the present case do not come within any of the exceptions.

Such statements have sometimes been received upon the ground that they are admissions by an owner to whom the party, against whom they are offered, is privy in estate. But not every such statement is competent evidence; only those relating to the title of the declarant are admissible in evidence against his privies. The declarations now under consideration are not of this character.

There is no legal principle upon which they can be treated as evidence of acts constituting undue influence.

The weight of authority touching this matter is in accordance with true principle, but it is not necessary here to review the cases. In *Boylan* ads. *Meeker, 4 Dutch. 274,* Whelpley, J., refers to many of them, examining the point with much care; and more recently, in *Shailer* v. *Bumstead, 99 Mass. 112,* Colt, J., has discussed the subject with great clearness of discrimination, the conclusion in both opinions being that at which we have arrived. In *Horn* v. *Pullman, 72 N. Y. 269,* the principle is assumed as indisputable.

Leaving out of view, then, any declarations of the testator, as evidence of attempts to influence his testamentary purposes, there remain to be considered only two matters which at all suggest the possibility of such influence.

The first is the fact that the will in question was drawn by one of the favored legatees. While this circumstance does not of itself invalidate a will, it certainly is a matter which excites the judicial mind to suspicious scrutiny. In *Den* v. *Gibbons, 2 Zab. 137,* Chief-Justice Green is reported to have said that where the testator was very infirm and the will executed in the article of death, it had been rightly held that the preparation of the will by the principal legatee was conclusive against its validity. So, other concomitants might readily be suggested, which would give to the fact that the favored party had drafted the instrument, almost irresistible force as evidence that the alleged testament was not the will of the decedent. But in the present case, this fact stands substantially alone as ground of suspicion.

When the will was drawn, the testator did not reside with, or depend to any degree upon his son, the draftsman, but lived in cordial relations with his own wife, who is now a contestant; the execution of the will was not concealed, but was a subject of conversation between the testator and this son in the presence of testator's wife, just before they went to the son's office to prepare and execute it; the will evinces no marked change of testamentary purpose, for it corresponds closely with two wills executed within fifteen months previous, in the preparation of which the accused legatee took no part; this legatee is a lawyer, to whom, therefore, it was natural that his father should look for aid in drafting a legal instrument. He is placed by the will on only an equal footing with another of the three children of the testator living at its execution, and there appear grounds on which it is probable the testator might conclude to discriminate, as he has, against the third son; and lastly, the testator's mind seems to have been clear and vigorous, subject only to such defect of memory as is usually incident to old age. So that there is neither mental imbecility, dependence on the legatee, glaring change in testamentary intention, unreasonable or inofficious bequests in favor of the legatee, attempts on his part to conceal from others interested knowledge of the will, strangeness in the fact that the legatee drafted the will, or any other circumstance tending to confirm the suspicion which that fact may engender. Under these conditions, the suspicion should be laid aside.

The second matter adduced as indicative of undue influence, may be briefly adverted to: it is, that more than two years after this will was signed, the contestant son was invited by his father to visit him, and during the visit the testator expressed dissatisfaction with his will and a desire to change it; that then an altercation arose among the sons in their father's presence, and, after an interview apart with the two favored sons, the testator said he could not have this trouble, and the will must remain as it was. Aside from the denial, on the part of the proponents, that such an occurrence took place, we think that it is not to be inferred from this instance of acquiescence by the testator, that his will, made so long before, was the offspring of these sons' influ-

ence.   The evidence makes it quite plain that, at this later date, senile decay had made considerable inroads upon the testator's mind, and its operations then are not reliable *indicia* of what they might have been when the will was executed.

On examination of the whole case, we are convinced that the instrument propounded is the last will of Gershom Rusling, deceased, and that the decree of the chancellor should be affirmed.

*Decree unanimously affirmed.*