STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. OLIVE
CORSON, PLAINTIFF IN ERROR.

Argued January 21, 1931—Decided October 6, 1931.

Before GUMMERE, CHIEF JUSTICE, and Justices TREN-
CHARD and LLOYD.

For the plaintiff in error, *Edison Hedges.*

For the defendant in error, *Louis A. Repetto,* prosecutor
of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error, Olive
Corson, was convicted under an indictment charging her
with the crime of abortion committed upon one Clara E.

Walton. The proofs submitted on the part of the state showed that Miss Walton, being pregnant, went to the home of Mrs. Corson on the 10th of August, 1930, in company with her sister, and requested Mrs. Corson to take the necessary steps to cause a miscarriage, and that in compliance with this request Mrs. Corson performed an operation which produced the miscarriage. As a result of the operation Clara Walton died a little more than two weeks thereafter. The defendant, Mrs. Corson, admitted that Miss Walton and her sister called at her home and requested her to commit the abortion, but stated that she refused to do so, and that thereupon Miss Walton and her sister left her home. The state also introduced in evidence a statement made by Miss Walton on the day of her death, and which was reduced to writing, in which she declared that she had gone to Mrs. Corson's home for the purpose of having an abortion committed; that the latter performed the illegal operation and was paid for doing so, the decedent giving her $15 in cash and a ring worth $25. This written statement was admitted as a dying declaration, and the first ground upon which we are asked to reverse the judgment is that the declaration was improperly admitted over objection, because there was no evidence that the deceased was under a sense of impending death at the time when it was made.

The proofs showed that on the day of the making of the declaration Clara Walton was visited by a member of the staff of the prosecutor of the pleas; that he had a conversation with her, and that in the course of that conversation he stated to her that she was about to die and that he would like to get her dying statement; that she then said, "am I?" to which the prosecutor's assistant replied, "yes," and then the girl said, "all right," and thereupon made to him the statement which is contained in the alleged dying declaration. After the statement was made he transcribed it and read it over to her, and after he did this she signed it. It seems to us that the facts recited show that the declaration was made under a sense of impending death, or at least, that the trial court might so find. In a similar case Mr. Justice

Trenchard declared in an opinion rendered by the Supreme Court, that "these statements, and their concomitant circumstances, show, or so the court might and did find, that both of the declarations were made under a sense of impending death." *State* v. *Bricker*, 98 *N. J. L.* 58, 60. We consider that the trial court was justified in finding that the oral declaration and the subsequent written one were made under sense of impending death, and, that being so, the first ground of reversal is without legal merit.

The next ground of reversal is that the court erred in refusing, on motion of counsel for the defendant, to withdraw a juror and declare a mistrial because of the fact that the prosecutor during his summation made a prejudicial remark which was not justified by the proofs. In our opinion there is no merit in this contention. As was stated by the Supreme Court in the case of *State* v. *Terry*, 91 *N. J. L.* 539, 543, the rule in this state undoubtedly is that where counsel in summing up to the jury goes outside of the testimony and makes appeals based upon facts which have not been proved but rest upon his unsupported assertions, the party injuriously affected must, in order to be relieved, move the trial court to order the remarks stricken out and to charge the jury that they should be disregarded. Counsel for the plaintiff in error did not see fit to follow the course stated in the cited case, but in effect asked the court to disregard that rule and to substitute therefor a rule of procedure not recognized by our courts.

The third ground for reversal urged by counsel is that the court erred in refusing to charge the following request submitted by him: "A woman of fifty-nine years of age is capable of having an adopted daughter as a matter of law." The request was based upon the fact that during the testimony of one Dorothy Murphy, an important witness for the defendant, she was asked her age and replied that she was nineteen. She was later asked the age of her mother, to which she replied seventy-eight. The theory of the request was that although it was improbable that a woman fifty-nine years of age would have a baby, there was nothing to prevent

her from having an adopted daughter. This may be assumed to be true; but the request was properly refused as it dealt with a fact that was entirely immaterial. Moreover, there was no evidence that the witness was the legally adopted daughter of her reputed mother, and the request was based upon a fact that was not in evidence.

The next contention is that the court erred in permitting, over objection of counsel, a witness to be asked the question, "whether or not in your opinion, you being the nurse in the case, you believe that this woman was under the premonition that she was going to die at the time she signed this statement." An examination of the record shows that this question was not asked by counsel for the state, but by the court. The proofs showed that the witness, who was the nurse of the girl in the hospital, was present during the conversation had between the girl and the representative of the prosecutors office, and the subsequent signing of the written statement. The question was asked before the dying declaration was admitted in evidence. Whether or not the opinion of the witness was evidential upon the question of the girl's premonition of impending death depended upon the facts upon which it was based. Presumably it rested upon the knowledge of the witness of the girl's condition and her statement to the prosecutor's assistant that she was about to die. The question was not legally objectionable. If counsel for the defendant desired to know upon what the opinion of the witness was based, it was open to him to find out by cross-examining the witness.

Next it is argued that the court erred in permitting over objection the following leading question to be put to the surgeon who made the post mortem examination: "Could the spot on the inside of the uterus be caused by the insertion of a catheter?" to which the witness answered: "It might be so caused or it might be caused by any instrument having a hard or soft surface that when it was inserted would make an abrasion." Counsel submits no argument in support of his contention that this question was erroneously admitted, contenting himself with the statement that

the effect of it was to lead the jury's mind into believing that the insertion of a catheter had caused the spot on the uterus. The answer to the question, however, indicates that this contention is not justified.

These are the only grounds upon which we are asked to reverse, and, finding them without merit, we conclude that the judgment under review should be affirmed.