WALTER K. CRATER, PLAINTIFF-RESPONDENT, v. COUNTY
OF SOMERSET, DEFENDANT-APPELLANT.

Argued May 19, 1939—Decided October 16, 1939.

For the appellant, *Lum, Tamblyn & Fairlie* and *Grover F. Kipsey* (*Ralph E. Lum,* of counsel).

For the respondent, *T. Girard Wharton.*

The opinion of the court was delivered by

HEHER, J.   We entertain the view that the respondent, Crater, as the duly elected clerk of the County of Somerset, is an "officer" of the county within the intendment of section 40:11-17 of the Revised Statutes of 1937, derived from chapter 271 of the laws of 1931.  *Pamph. L., p.* 681.

True, respondent is the holder of an office established by the State Constitution.  *Article VII, section II, placitum* 6.  Yet, the jurisdiction is essentially local in character, albeit the incumbent may on occasions exercise delegated sovereign power.  Territorially, his jurisdiction is limited to the county —as a common law political subdivision—whose electors have chosen him to serve in that capacity.  The Constitution classifies the incumbents as "clerks  *  *  *  of counties," and

provides for their election "by the people of their respective counties * * *." It is of no moment that, as maintained by respondent, "the duties of the county clerk * * * affect the welfare of the state and its people as a whole." Nor is it conclusive of this inquiry that the Constitution provides that "all civil officers elected or appointed pursuant to the provisions" thereof "shall be commissioned by the Governor," or that the Governor is empowered to fill *pro tempore* a vacancy in such office. *Article VII, section II, placitum* 10; *article V, placitum* 12. The prescribed service is rendered to the county as a political subdivision of the state. While fixed by the legislature, the salary is paid by the county.

But, apart from the foregoing, the question is, after all, one of legislative intent. While a public officer may function in a dual capacity, *i. e.,* in the exercise of state governmental functions and those strictly municipal (*vide Rodgers* v. *Taggart,* 120 *N. J. L.* 243; *affirming* 118 *Id.* 542), the determinative inquiry here is whether the legislature, by the designation "officer * * * of any county," embodied in *R. S.* 1937, 40:11-17, designed to include the clerk of such civil division. We find unmistakable tokens of that purpose. Under title 40, "Municipalities and Counties," subtitle 1, chapter 11, "Officers and Employes," it is ordained that, except as otherwise provided by law, residence in the county is an indispensable qualification for the holder of "an office, the authority and duties of which relate to a county only * * *." *R. S.* 1937, 40:11-1. The statutory provision under review has likewise been incorporated in title 40, subtitle 1, chapter 11, *supra;* and it is also significant of this legislative view that, in the provision fixing salaries, such officers are designated as "county clerks." Sheriffs are in like manner classified. *R. S.* 1937, 40:41-1. So, too, the surrogates, although under a different title. *R. S.* 1937, 2:7-1, *et seq.;* 2:31-4, *et seq.*

There is no occasion to consider whether section 40:11-17, *supra,* contravenes *article IV, section VII, placitum* 11, of the State Constitution, prohibiting the passage by the legislature of "private, local or special laws * * * regulating the internal affairs of towns and counties," for, on the assump-

tion of such constitutional invalidity, there is no statutory authority for the payment of the compensation sought to be recovered here.

Section 40 :38-5 of the Revision regulates the salaries of the clerks of the several counties of the state, and for that purpose classifies them according to population. Section 40 :38-6 provides that, "Except as otherwise provided by section 40 :11-17 of this title the salaries provided for by section 40 :38-5 * * * shall be determined and paid upon a basis of population shown by the latest census, without regard to the date of election or appointment of the county clerk," with a saving clause against diminution of the salary of such officer "during the term of office to which he has been or may be elected or appointed immediately preceding the promulgation of a national census." Section 40 :11-17 directs that "The promulgation or taking effect of the federal census for the year one thousand nine hundred and thirty, or the passage of an act for the reclassification of counties of this state, shall not operate to increase or decrease the salary or compensation of any officer or employe of any county or municipality," and that "All such officers and employes shall continue to receive salary or compensation at the rate received by them on April twenty-seventh, one thousand nine hundred and thirty-one."

These provisions, taken and compared together, decree in peremptory language that the federal census of 1930 shall not be operative to "increase or decrease" the salaries of county clerks as prescribed in section 40 :38-5, *supra*. It is an elementary canon of construction that effect must be given, if possible, to every clause and sentence of a statute. It is to be presumed that every provision has significance in the delineation of the legislative purpose. The qualifying phrase, "Except as otherwise provided by section 40 :11-17 * * *," contained in section 40 :38-6 (this is a re-enactment of a part of the act of 1927), is not, as respondent maintains, a "cross-reference" within the purview of section 1 :1-6 of the Revision. It is indubitably of the essence of the statutory scheme, serving to modify the subsequent direction of that provision.

The three sections are connected in subject-matter, and so inter-related that there is no basis for the presumption that the legislature would have enacted section 40:38-5 in its present form as to classification and *quantum* of compensation, without the accompanying provision embodied in section 40:11-17. These provisions are plainly interdependent. Section 40:38-5, stripped of the modification incorporated in section 40:11-17, cannot be enforced without doing violence to what reasonably appears to have been the legislative intent. These are the considerations which determine the scope and effect of the asserted constitutional deficiency. *St. John the Baptist Greek Catholic Church* v. *Gengor,* 121 *N. J. Eq.* 349; *Stackhouse* v. *Camden,* 96 *N. J. L.* 533; *State* v. *Sutton,* 83 *Id.* 46; *United Stores Realty Corp.* v. *Asea,* 102 *N. J. Eq.* 600; *Morgan* v. *Monmouth Plank Road Co.,* 26 *N. J. L.* 99; *Cooley Const. Lim.* (*8th Ed.*) 360, 366; *Lewis' Sutherland Statutory Construction* (*2d Ed.*), §§ 296, *et seq.* Section 1:1-10 of the Revision does not lay down a different rule. And the definition of the term "census," as generally used in the Revision, set forth in section 1:1-2, is manifestly not applicable to this situation. To hold otherwise, as respondent suggests, would run counter to the explicit direction of the legislature.

Nor is respondent aided by section 1:1-12 of the Revision. The argument that it is applicable proceeds on the erroneous premise that, under the old statutes, respondent was entitled, at the time of the enactment of the Revision (his election to said office and qualification having taken place prior thereto), to an annual salary at the rate pleaded, and therefore the last cited provision of the Revision served to safeguard the asserted pre-existing salary against impairment by virtue of any other provision thereof. Prior to the Revision, the salaries of surrogates, sheriffs and county clerks were regulated by chapter 204 of the laws of 1927 (*Pamph. L., p.* 389); and the argument is now made that chapter 271 of the laws of 1931 (*Pamph. L., p.* 681) constituted a legislative attempt, "by an independent enactment containing no reference whatsoever to the 1927 law," to "continue the *status quo* of such

salaries," and that it therefore cannot be "said, with reason, that the 1927 law became so dependent upon and such an integral part of the 1931 law, that the unconstitutionality of the latter destroyed the former."

We do not yield the argument thus made. The considerations adverted to are likewise dispositive of this contention. Evidently, it was the legislative purpose to ingraft upon the act of 1927, *supra,* the limitation embodied in the act of 1931; and there is no tangible reason to doubt that it would not have continued the act of 1927 in existence, unaltered as to classification and *quantum* of compensation, if the federal census of 1930 were to remain operative as regards the graded salaries therein appointed. By plain and imperative provision, the limitation of the act of 1931, *supra,* was incorporated in the basic statute of 1927; and it thereby became an integral part of the statutory scheme of compensation.

The act of 1931 was not inherently vicious in a constitutional sense. In essence, the claim advanced by respondent is, not that this act in itself transcended constitutional limitations, but that, by reason of its incorporation in and modification *pro tanto* of the act of 1927, the latter enactment lost the virtue of the constitutional generality, in that the classification of the counties of the state for the purpose of regulating the compensation of the enumerated officers rested upon distinctions that were insubstantial and illusory. See *Raymond* v. *Teaneck,* 118 *N. J. L.* 109. The claimed arbitrary classification arose only from the incorporation of the act of 1931 into the earlier statute.

These enactments were *in pari materia,* and, on well settled principles of interpretation, are to be construed together as a homogeneous and consistent whole, giving effect to all their provisions and leaving no clause inoperative. Combined. they set up what the legislature deemed to be an appropriate scheme of compensation; and that system, as regards constitutional sufficiency, must stand or fall in its entirety. To say that the act of 1931, itself free of constitutional invalidity, must be discarded because, when read into the underlying act of 1927, the classification provided does not meet the con-

stitutional test of generality, is to do violence to the plainly expressed legislative will. This, in the final analysis, is the determinative inquiry. While it is the general rule that a repealing clause in an unconstitutional enactment is considered merely incidental, and therefore falls with the void enactment of which it is a part, the question in every case is one of legislative intention. 11 *Am. Jur.* 841, *et seq.*

Viewing this legislation in the light of the attendant circumstances, there is no room for doubt as to the legislative intention in this regard. A substantial reduction in the salary and wage scales of private business and industry, and widespread unemployment, were the concomitants of the current economic crisis. As a result of these and kindred factors, the tax burden had become well nigh intolerable; and the legislature, as a means of alleviation, plainly designed to avert the salary increases that would normally have followed the promulgation of the 1930 census. Whatever its constitutional aspect, the act provided in language clear and unmistakable that the salary schedule laid down in the act of 1927 should not be affected by the census of 1930; and the classification so made is not separable and divisible so far as its constitutional adequacy is concerned. It suffices to add that we are under a duty to refer to the history of the times "to ascertain the reason for, and the meaning of the provisions of a statute, and to the general state of opinion, public, judicial and legislative, at the time of the enactment. And the unmistakable evidence of such contemporaneous circumstances of the intention of the legislature should govern the construction of a statute whose terms are left doubtful by its language, and whose object is the correction of an abuse." *Endlich on the Interpretation of Statutes,* § 29.

Moreover, the treatment of these statutes in the Revision of 1937 is not without significance. It would seem to afford a demonstration of the foregoing as the legislative sense of these pre-existing enactments, which, while not conclusive, is a circumstance to be considered in aid of interpretation. Regard is to be had, in this connection, to section 1:1-4, directing that "The provisions of the Revised Statutes, not incon-

sistent with those of prior laws, shall be construed as a continuation of such laws."

There is a presumption against a legislative intention, by a revision of general laws, to effect a change of substance. That presumption is not, *ex necessitate,* overcome by mere change of phraseology, or the addition or omission of words in the revision; the intention to alter the essence must be expressed in language admitting of no reasonable doubt of the purpose. *King* v. *Smith,* 91 *N. J. L.* 648; *Newark* v. *Tunis,* 81 *Id.* 45; *affirmed,* 82 *Id.* 461; *Trenton* v. *Standard Fire Insurance Co.,* 77 *Id.* 757; *State* v. *Anderson,* 40 *Id.* 224; *In re Murphy,* 23 *Id.* 180; *Hendrickson* v. *Fries,* 45 *Id.* 555; *O'Hara* v. *National Biscuit Co.,* 69 *Id.* 198.

The judgment is accordingly reversed; and, since these conclusions are dispositive of the merits of the pleaded cause of action, the record is remanded to the end that the complaint be struck out and judgment final entered for defendant.

*For affirmance*—Donges, Perskie, JJ.   2.

*For reversal*—The Chancellor, Chief Justice, Parker, Bodine, Heher, Porter, Hetfield, Dear, Wells, Wolfs-Keil, Rafferty, Hague, JJ.   12.