29 N.J. Super. 183 (1954)
102 A.2d 70
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BENJAMIN FERRELL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1953.
Decided January 2, 1954.
*184 Before Judges CLAPP, GOLDMANN and EWART.
Mr. C. William Caruso argued the cause for the State.
Mr. Charles Silverman argued the cause for defendant-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
The appellant, Benjamin Ferrell, was convicted under an indictment charging him and others with atrocious assault and battery. This, a fourth conviction, led to a life sentence under N.J.S. 2A:85-12.
A number of points are raised, but we find it necessary to consider only one. This has to do with an allegedly improper remark of the assistant prosecutor at the trial. On this matter, there was a diminution in the transcript of the testimony. So, the trial judge having died after the trial, and there being but ten minutes of oral testimony needed, we, upon the authority of the New Jersey Constitution, Art. VI, Sec. V, par. 3 and R.R. 1:5-4 and 2:5, and notwithstanding the provisions of R.R. 1:6-6, took the testimony ourselves.
The authority to take testimony here cannot be doubted. Under the constitutional provision, this "court *185 may [R.R. 1:5-4 is identical, except that for the word "may," it substitutes "shall"] exercise such original jurisdiction as may be necessary to the complete determination of any cause on review." The lineage of this provision can be traced, by its very language, to the proposed Constitution of 1944 (L. 1944, p. 219); to the draft prepared by the Commission on Revision of the New Jersey Constitution, Art. V, Sec. IV, par. 4 (1942) (IV Proceedings of the Constitutional Convention 1947, 562); to the proposed 1909 constitutional amendments, Sec. V, par. 1 (L. 1909, p. 380); and so to the English Judicature Act of 1873, section 19. The kinship between these provisions may be more evident if it is noticed that the 1944, 1942 and 1909 provisions confer jurisdiction "incident to" etc. (compare the above constitutional phrase, "necessary to"); while the Judicature Act gives the Court of Appeal, for all purposes "incidental to" the determination of an appeal, all the jurisdiction of the High Court of Justice. Cf. Hartshorne, Courts and Procedure, England and New Jersey, 125, 131, 171 (1905). In England the Court of Appeal, pursuant to the Judicature Act (see Order 58, Rule 4), and similarly the Court of Criminal Appeal, pursuant to the Criminal Appeal Act 1907, § 9 (b) (Criminal Appeal Rules (1908), Rule 40), have a discretionary power to take evidence by oral examination or otherwise, subject to certain regulations which need not concern us. 26 Halsbury's Laws of England 121 (2nd ed.); 9 Id. 271. Further see Pound, Appellate Procedure in Civil Cases 303, 368, 387 (1941); Pound's Note on the present subject, 56 Harv. L. Rev. 1313; Rusling v. Rusling, 36 N.J. Eq. 603, 605 (E. & A. 1883); Personette v. Johnson, 40 N.J. Eq. 173 (Prerog. 1885); 5 C.J.S., Appeal and Error, § 1523, p. 244; 2 C.J.S., Admiralty, § 186, p. 316; and the interesting case of Ballurio v. Castellini, 27 N.J. Super. 113 (App. Div. 1953).
It might be noted that in Goddard v. Kelly, 27 N.J. Super. 517 (App. Div. 1953), the taking of testimony before this Part was authorized, though ultimately found unnecessary. In that, an election case, the election was so near, there was *186 no time to send the case back for testimony on the narrow issue involved.
So, taking the simple and expeditious course here, we ourselves heard the witnesses presented, namely, the assistant prosecutor and the defendant's attorney below. The former's allegedly improper remark came in his summation, while speaking on the failure of the defendant, Benjamin Ferrell, to take the stand. He was saying "What does he (the defendant) have to hide?" There was objection. The court overruled it, and the assistant prosecutor repeated the question. He, then turning halfway from the jury so as to look at defendant's attorney, said to the latter: "If you step out in the hall, I will tell you why the defendant did not take the stand."
The insinuations that go with this gross remark are patent. The following cases of other jurisdictions, set forth illustratively, hold it a reversible matter for the prosecutor to insinuate, to the prejudice of the defendant, knowledge of facts, not revealed in the evidence. Commonwealth v. Shoemaker, 240 Pa. 255, 87 A. 684 (Sup. Ct. 1913); State v. Lenzner, 338 Mo. 903, 92 S.W.2d 895 (Sup. Ct. 1939); King v. State, 98 Tex. Cr. R. 81, 263 S.W. 281 (Ct. Crim. App. 1924); cf. State v. Susan, 152 Wash. 365, 278 P. 149 (Sup. Ct. 1929). Indeed a vague challenging insinuation of unlimited import uttered by the officer there to represent the State, may be far more damaging than an allusion to some specific fact not in the record, which is a serious enough matter.
Here there was neither objection to the assistant prosecutor's remark, nor request that the court direct the jury to disregard it. The court did charge: "* * * You cannot in any way take into consideration * * * any colloquy that there might have been between counsel * * *." But there were a number of these colloquies, and it can hardly be contended that the influence of the remark mentioned was removed by so general an instruction.
A line of cases in this State, dealing with prejudicial remarks of the prosecutor, refused to reverse where the court *187 was not asked to instruct the jury to disregard the remarks. State v. Terry, 91 N.J.L. 539 (E. & A. 1917); State v. Corson, 108 N.J.L. 12 (Sup. Ct. 1931), affirmed 109 N.J.L. 144 (E. & A. 1932); State v. Hauptmann, 115 N.J.L. 412, 416 (E. & A. 1935); State v. Deegan, 133 N.J.L. 263 (E. & A. 1945). However N.J.S.A. 2:195-16, then in effect, though it required an appellate court to pass upon certain sorts of error as to which no objection was taken, did not embrace such a matter as this. State v. Biango, 79 N.J.L. 523 (E. & A. 1910).
We are governed by R.R. 1:5-1 (a), and it is not confined in its terms, as was N.J.S.A. 2:195-16. It provides: "the court may * * * notice plain errors affecting substantial rights of the defendant, although they were not brought to the attention of the trial court." The rule gives a power or discretion to the appellate court in case of plain error, and correlatively, it will be observed, puts a burden in such a case on the trial judge to act of his own motion to prevent or rectify the error. It might be noticed, too, that the power given by our rule to notice such errors is like that given to the federal courts by Rule 52 (b) of the Federal Rules of Criminal Procedure, from which our rule is taken. Indeed the federal rule is an outgrowth of an earlier federal practice. United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1946); United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936); Wiborg v. United States, 163 U.S. 632, 658, 16 S.Ct. 1127, 41 L.Ed. 289 (1895).
There is no doubt that the assistant prosecutor's remark was improper and constituted error on his part. The Supreme Court in State v. Bogen, 13 N.J. 137 (1953), spoke strongly on the general matter. There is no doubt, too, that here was a "manifest wrong," constituting  had objection been taken below and been overruled  reversible error. R.R. 1:5-1 (a). However, the "plain error" rule does not call upon us to notice every reversible error; were that the rule, counsel would be discharged entirely of the *188 obligation of making objections below, and the course of justice, civil as well as criminal, would be obstructed with appeals and new trials that would have been avoided by requiring timely objection. The question, then, is whether there is here reversible error of a sort calling upon us to notice it.
The remark here is of a shocking character. State v. Picciotti, 12 N.J. 205 (1953); cf. New York Central R. Co. v. Johnson, 279 U.S. 310, 40 S.Ct. 300, 73 L.Ed. 706 (1928). Besides, it was uttered in a trial for a fourth high misdemeanor, a grave matter, especially so, as the law stood in 1952 under N.J.S. 2A:85-12. It would be speculative on our part to say what part that remark had in bringing about the conviction and, subsequently, the life sentence. However, the State's proofs being by no means strong (cf. Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)), we are satisfied that the remark so seriously affected the defendant's rights, it may well have led to the conviction. Surely that calls for interference on our part. In re Stern, 11 N.J. 584, 590 (1953).
Reversed and new trial ordered.