40 N.J. Super. 600 (1956)
123 A.2d 881
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GERALD KOHLER AND SAM COEN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 18, 1956.
Decided July 13, 1956.
*601 Before Judges CLAPP, JAYNE and FRANCIS.
*602 Mr. Frank J.V. Gimino argued the cause for plaintiff-respondent (Mr. Frederick T. Law, prosecutor).
Mr. Maurice C. Brigadier argued the cause for defendants-appellants (Mr. Seymour Margulies on the brief).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Defendants were convicted under an indictment charging them with having in their possession obscene moving picture films "with intent to utter or expose [the same] to the view of another," contrary to the provisions of N.J.S. 2A:115-2. They appeal.
The films, eight millimeters in size, were part of the stock in trade of a retail novelty store in Union City, N.J. operated by defendants, who were respectively the owner of the store and his clerk. At the opening of the trial below, defendants admitted possession of the movies with intent to sell the same. Furthermore, in response to the court's question, they through their attorney then agreed that the case involved but a single question, namely, whether or not the films were obscene.
Three rolls of these films were exhibited to the trial court (which heard the case without a jury) on the representation made by a State's witness that they were typical of the films found by the police at the store. In fact, the defendant who owned the store testified later that the three rolls, which he had seen at the time they were exhibited to the court, and the other rolls which were taken by the police from the store were all of the same character (and it may be noted, by the way, in answer to one of the arguments advanced on behalf of that defendant, that this very testimony contains an implication that he possessed actual knowledge of the character of these films). At the time of the oral argument before us we also, on the special request of defendants' counsel, viewed these three films.
Defendants have devoted a good part of their brief to a consideration of authorities and law review articles dealing with the law of obscenity. But this is no case in *603 which to enter upon a discussion of that subject; there is no borderline question here. In fact, we see no reason even to state the nature of the three movies. It is sufficient merely to say, with respect to at least two of the three films, that the motion for acquittal made below on the ground that these films were not obscene was properly denied. The test question on the issue of obscenity, as stated in Adams Theatre Co. v. Keenan, 12 N.J. 267, 272 (1953),
"is whether the dominant note of the presentation is erotic allurement `tending to excite lustful and lecherous desire,' dirt for dirt's sake only, smut and inartistic filth, with no evident purpose but `to counsel or invite to vice or voluptuousness.'"
Cf. Bantam Books, Inc. v. Melko, 25 N.J. Super. 292 (Ch. Div. 1953), modified 14 N.J. 524 (1954). Not only the dominant note, but indeed the sole crude note of those two movies was erotic allurement of a pornographic character, within the standard above laid down. It could not be pretended that the sale of these films served any socially defensible purpose, State v. Weitershausen, 11 N.J. Super. 487, 491 (App. Div. 1951), nor, in our view, any venial purpose.
Counsel for defendants raise other questions on the appeal. But, as above indicated, all other issues were eliminated from the case by agreement of the attorney who appeared for defendants below. There is, to be sure, a rule  usually applicable where the attorney for a party is silent (i.e., fails to object) in the face of action taken or omitted below  which enables an appellate court under certain conditions to notice plain errors not brought to the trial court's attention. R.R. 1:5-1(a). But where the State does not attempt to bring in proof as to various issues because of an express waiver by defendants' attorney, an appellate court will not grant a new trial calling for proof of those issues  except in that unusual case where, after taking the waiver into account, it very definitely appears that the defendant has been convicted unjustly. Cf. State v. Haines, 18 N.J. 550, 565 (1955); State v. Picciotti, 12 N.J. 205, 211 *604 (1953); State v. Ferrell, 29 N.J. Super. 183, 187, 188 (App. Div. 1954). Applying this rather rigorous standard, we find none of the other contentions, now presented, to be deserving even of attention, except possibly one.
This contention is that the State did not, and probably could not, establish an intention on defendants' part to utter and expose the films to the view of others, as charged in the indictment; for their purpose was but to sell the films.
In examining this contention we may exclude from consideration the alleged intent to expose the films to others. For where an indictment, such as the one before us, charges a defendant with having the possession of an article with an intent to utter it and also with an intent to expose it to others, a conviction thereunder is sustainable even though the proofs establish only one of these intents. State v. Hill, 73 N.J.L. 77 (Sup. Ct. 1906), affirmed 74 N.J.L. 689 (E. & A. 1907). It was there held with respect to this statute that an utterance, an exposure to the view of others, and a possession with the intent to utter or expose to view or to sell, "each * * * may be considered as representing a phase of the same offense" (73 N.J.L., at page 79); and
"* * * when an offense may be committed by doing one of several things, the indictment may in a single count group them together and charge the defendant with having committed them all, and a conviction may be had on proof of any one of these things without proof of the commission of the others." 73 N.J.L., at page 81.
The issue before us then comes down to this, namely, whether the proof or the admission of the intent to sell establishes the intent to utter alleged in the indictment. What is the meaning of utter as used here? In Hill the court held, dealing with this statute, that utter means "to put out, to pass off." The intent of the defendants in this case to sell at retail these films which formed a part of their stock in trade would seem to constitute an intent to "put out" the films  to hand over the possession of the same, as well as the title, to the retail purchaser. Cf. State v. Hill, supra, 73 N.J.L., at page 80. Hence the word "utter," *605 taking it in its natural sense, embraces the sales under contemplation. People v. Rathbun, 21 Wend. 509, 527, 528, 533 (N.Y. Sup. Ct. 1839); United States v. Fout, 123 F. 625, 628 (D.C. Mo. 1903); State v. Mills, 146 Mo. 195, 47 S.W. 938, 941 (Sup. Ct. 1898). In accord, see the authorities holding that the verb "utter" means "to cause to pass in trade." Webster's New International Dictionary (2d ed.); People v. Descant, 51 Cal. App.2d 343, 124 P.2d 864, 867 (D. Ct. App. 1942); State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198, 206 (Sup. Ct. 1954).
Defendants, however, seem to claim that under this statute, N.J.S. 2A:115-2, an utterance includes every species of putting out, other than a sale. The critical statutory words are these:
"Any person who, without just cause, utters or exposes to the view of another, or possesses with intent to utter or expose to the view of another, or to sell, any obscene or indecent book, pamphlet, picture or other representation, however made, * * * is guilty of a misdemeanor."
The defendants rest their argument on the history of the statute. They seem to contend that the verbal expressions in Rev. 1877, 234, § 44 
"utter or expose to the view of another, or have in his possession with intent so as to utter or expose to view"
and those in Rev. 1877, 235, § 45 
"shall sell or offer to sell, or shall give away or offer to give away * * * or have in his or her possession with intent to sell or give away"
must be given mutually exclusive significations because they appear in separate sections, standing side by side. The Crimes Act of 1898, they say, merely brought together into one section, L. 1898, c. 235, § 53 (in language which in substance remains with us today in N.J.S. 2A:115-2) these expressions, in particular the words "utter" and "sell"; and it *606 therefore must have continued the mutually exclusive significations theretofore attaching to those two words.
But this overlooks the earlier history of our present statute on obscene literature and pictures. It originated in three acts:
L. 1868, c. 536, which made it a crime to "sell, or expose for sale, or give, or permit to be taken from his or her premises or possession any obscene book" or other article enumerated;
L. 1869, c. 440, § 1, which made it a crime to "sell, or offer to sell, or * * * give away, or offer to give away, or have in his or her possession with intent to sell or give away, any obscene and indecent book" or other article enumerated; and
L. 1873. c. 408, § 1, which made it a crime to "sell or offer to sell, or * * * give away or offer to give away any, or have in his or her possession with intent to sell or give away, or use any obscene or indecent book" or other article enumerated. (This last section became in substance Rev. 1877, 235, § 45, above cited.)
The acts of 1868 and 1869 were, according to a marginal note in the Revision of 1877 (these notes were prepared by the distinguished revisers, Mercer Beasley, David A. Depue and Cortlandt Parker, with the assistance of the reporters, Mr. G.D.W. Vroom and Mr. John H. Stewart; see prefatory note to the Revision), "combined" to form Rev. 1877, 234, § 44. In other words, the verbal expressions "sell," "expose for sale," "give," "permit to be taken from his or her premises or possession," "have in his or her possession with intent to sell or give away," were replaced in the Revision by the provision
"utter or expose to the view of another, or have in his possession with intent so as to utter or expose to view." Rev. 1877, 234, § 44.
Having in mind that the statutes were intentionally "combined" here, it can be said with considerable force that the word "utter" in the Revision was intended to include a retail sale. Changes in language made by a revision will not be deemed to have effected changes in substance unless it is clear or beyond a reasonable doubt that such was the purpose. State v. Anderson, 40 N.J.L. 224, 226 (Sup. Ct. 1878); *607 Crater v. County of Somerset, 123 N.J.L. 407, 414 (E. & A. 1939). We might add at this point that we do not pass on the effect of a marginal note from a less authoritative source. State v. Burrell, 120 N.J.L. 277, 283 (E. & A. 1938).
It may be that the reason why Rev. 1877, 235, § 45 was retained in the Revision of 1877 as a separate section immediately following § 44 was because of the special provision therein made for dividing any fine imposed, among certain recipients, including informers who aided in bringing to justice these offenders against society. In any event, if the word "utter" as used in Rev. 1877, 234, § 44 embraced a sale, it continued to have the same force not only in the Crimes Act of 1898 (c. 235, § 53), which was palpably an amalgamation of the verbal expressions in Rev. 1877, 234, § 44 and 235, § 45, but also in the reenactments in substance of the amalgamated expression, which are to be found in R.S. 2:140-2 and N.J.S. 2A:115-2.
With this historical background in mind, we think little stress can be put by defendants on the configuration of the present statutory words
"utters or exposes to the view of another, or possesses with intent to utter or expose to the view of another, or to sell."
That is, we think that in view of this history it would be difficult to establish that the concept sell is to be excluded from the concept utter, merely because they appear in this context somewhat removed from each other and because the words "or to sell" are set off with a comma and introduced by a separate preposition "to." We may add also that defendants themselves urge (in another aspect of the argument) that while it may well be that an utterance cannot be effected unless there is a manual transfer of possession (except where there is a cheat. State v. Hill, supra, 73 N.J.L., at page 80), nevertheless a sale (i.e., a transfer of title) can be effected conceivably without any actual manual tradition. It follows, therefore, that the word "sell" may have at times *608 a significance of its own, not embraced in the word "utter," which amply explains its inclusion in the statute.
The point need not be labored further. We may say that in any event the arguments based on the history and the collocation of the statutory words are so inconclusive as to leave us quite unpersuaded that the word "utter," whether in the statute or an indictment returned thereunder, should be read so as to exclude a sale. We should always have in view some fairly satisfactory reason before we contract or alter the natural significance of a word.
We conclude, therefore, that proof or (as here) an admission of an intent to sell establishes an intent to utter within the indictment before us. That disposes of the point.
Affirmed.